STATE of Missouri, Respondent,

v.

**Tyrone G. PARKER, Appellant.**

**Nos. WD 52112, WD 53952.**

Missouri Court of Appeals,
Western District.

May 12, 1998.

Motion for Rehearing and or Transfer to Supreme Court Denied June 30, 1998.

James F. Speck, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephens, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and LOWENSTEIN and SPINDEN, JJ.

LOWENSTEIN, Judge.

Parker was convicted by jury verdict of murder in the second degree and armed criminal action for his part in driving the automobile from which shots were fired that caused the death of eleven month old Gregory Bolton, Jr. The shooting spree was aimed at a group standing in a front yard at 6120 Walrond in Kansas City. The infant victim was being held when shots erupted from a passing car. The child's grandmother who was holding the victim, as well as several others, were shot in the feet. Parker received a life sentence for the murder and twenty-five years for armed criminal action.

Parker has filed a direct appeal as well as an appeal from the denial of his Rule 29.15 motion for post conviction relief. Parker's jurisdictional statement mentions both appeals, but his only point in the brief covers his motion to vacate under Rule 29.15 for failure of trial counsel to render effective assistance. "Rule 30.06 requires that 'the points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous'." *State v. Stillman*, 938 S.W.2d 287, 289 (Mo.App.1997). Therefore, the direct appeal will be dismissed. Id. This opinion will deal with the allegations in the post-conviction remedy appeal.

Parker's assertions of ineffective assistance of trial counsel are centered on counsel's failure to adequately cross-examine Earl Wells, who testified in this trial that he had identified Parker as the driver of the car. The only point for Rule 29.15 relief asserts Wells had given four different accounts of the drive-by shooting. Specifically, eyewitness Wells had given a statement to police just after the shooting; had given a deposition in the case of co-defendant Chris Fras-

ure [1]; and had also testified for the state in the two trials of Frasure, which preceded this trial. Wells was the only witness to have given a positive identification of Tyrone Parker as the driver of the co-defendant Frasure's automobile, the vehicle used in the commission of the crime.

At the trial of this case, Wells testified that at the time of the shooting he lived at 6226 Walrond, and had known both Frasure and Parker, who were friends and who had lived in the 6100 block of Walrond for some ten years. He remembered that about two weeks before the crime in question there was a fight at 61st and Walrond between the deceased child's father and Frasure. A week later, one week before the crime in question, Frasure instigated a firing spree and shot the senior Bolton in the back. At 10:20 p.m. on August 12th, 1993, Wells was in the driveway of his father's house at 62nd and Bellfontine. Wells testified that he then heard shots and immediately ran toward the area. He had gone some 300 feet to the corner of 62nd and Walrond when Frasure's car, a blue Ford Granada with a Cadillac chrome front end, "flew past" with Parker at the wheel. Wells then saw the car of another neighbor, Oscar Bolton, following the Frasure car. Oscar Bolton had been a victim of the shooting and had jumped in his car to follow the Frasure car, but a tire had been shot out.[2] Bolton stopped, and asked which way Frasure's car had gone. Wells told him. About 25 seconds later Wells, who stayed on the corner, saw the Frasure car, with Frasure now in the driver's seat and the defendant, Parker, in the front passenger seat, parked at the corner of 62nd and Walrond facing west on 62nd Street. Wells made eye contact with Frasure and Parker, and shook his head at them. The car went south on Walrond. A police car came by and Wells told the officer who was, by coincidence, the same officer that had responded to the shooting a week earlier at 61st and Walrond where Parker and Bolton, Sr., had exchanged shots and where Bolton had been hit, the direction the Frasure car had taken. The officer gave chase to the Frasure car, but was unsuccessful. Wells then directed the police to the house where Parker lived, which backed up to where Frasure lived. When the policeman and Wells arrived next door, they saw Parker, Frasure and several others at yet another a house, and when the group saw the officer they "shot towards the house."

Appellate counsel for Parker's Rule 29.15 case presents the following inconsistent accounts of the evening as given by Wells, which counsel asserts were ignored by trial counsel in cross-examination of Wells: (1) Wells gave a statement to police four hours after the shooting in which he was asked if he could recognize anyone in the car and said, "At that time I, yes, I could look at and see that it was Chris or Tyrone as the only person that drive the car is Chris or Tyrone;" (2) in a 1994 deposition, Wells testified he had "started running up the block" towards the corner of 62nd and Walrond when he saw the Frasure car drive by, which was contrary to his trial testimony that he was already at the corner of 62nd and Walrond when he saw the Frasure vehicle; (3) at Frasure's trial, Wells testified he first saw the Frasure vehicle as he was walking toward 6120 Walrond, and then saw it the second time while he waited on the 62nd and Walrond corner, while his trial testimony in this case was that he never left that corner where he saw the vehicle both times; (4) in the 1994 deposition, Wells stated that the time between his first and second sightings of the vehicle was "a good 15 minutes," in the Frasure trial he said the lapse was twenty-five seconds, while at the Parker trial he said the lapse was five minutes; and (5) in his deposition, Wells said he spoke to Frasure and Parker after his second sighting when the car was stopped at the corner, while at defendant's trial he said that he made eye contact with them and shook his head. In a nutshell, the main portion of the motion for post-conviction relief asserts that trial counsel's failure to point out these inconsistent statements left the

---

1. Frasure was the owner of the car used in the crime, and the person who fired the shots. His name appears as both "Frasure" and "Fraiser" in the record.

2. Oscar Bolton was able to identify Frasure as the man who shot at the group at 6120 Walrond, but could not identify the driver.

jury with the impression Wells' story never changed.

At the Rule 29.15 hearing, trial counsel said his theory of defense was that neither Parker nor Frasure were involved in the shooting, but based on the statements of his client, had "driven by there after the shooting had occurred." Counsel also testified his client had told him that Wells had made eye contact with Parker on the corner of 62nd and Walrond.

■■■ The pertinent law and the scope of review of the denial by the trial court of the Rule 29.15 motion is succinctly set out in *State v. Harris*, 870 S.W.2d 798, 814—15 (Mo. banc 1994). Paraphrased, the court in Harris stated that trial counsel is ineffective if counsel fails to exercise the customary skill and diligence a reasonably competent attorney would exercise under similar conditions, and such failure is prejudicial. In order to be prejudicial, the acts or failure must be outcome determinative, that is based upon a showing of reasonable probability that the proceeding would have ended in a different result. The movant must overcome the presumption that counsel is competent. ˙ Reasonable trial strategy is not a ground for a ineffective assistance. Harris, 870 S.W.2d at 814. Under Rule 29.15(k), appellate review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous.

■■■ As to the first prong that counsel was deficient for not drawing out the described inconsistent statements of Wells, Parker faces a "heavy burden" to rebut the presumption of trial counsel being effective and competent. *State v. Perkins*, 831 S.W.2d 637, 641 (Mo.App.1992). Rarely will a strategic choice be declared to be unsound to the extent of depriving the accused of a fair trial. *Berry v. State*, 714 S.W.2d 676, 678 (Mo.App. 1986). Rarely will counsel be deemed ineffective for failure to go far enough in cross-examining a witness. *White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997). Of the five instances cited by Parker of failure to cross-examine, the decision not to question Wells about his inability to identify the driver of the car some four hours after the incident is the most difficult justify. Nonetheless, this

court will not denominate this decision of counsel as ineffective.

Even if counsel should have pursued Wells' prior inconsistent statements to have avoided the assertion of being professionally unreasonable, Parker fails to show the second prong for relief, "a reasonable likelihood that the decision reached would have been different absent the deficiencies of counsel's performance." *State v. Young*, 943 S.W.2d 794, 799 (Mo.App.1997). The jury knew an infant had been senselessly gunned down in a spray of fire, and neighbor Parker had been involved in an altercation and a gunfight in the preceding two weeks with the child's father. From the time immediately following the shooting through Parker's trial, Wells has been adamant that he saw Parker driving the car just after the shooting. How Wells got to the intersection and whether he went elsewhere or stayed at the corner where he was seen by Oscar Bolton and police could not have impeached Wells' credibility to the extent the jury would have totally disbelieved his trial testimony.

The motion court was not clearly erroneous in concluding that none of the omissions during trial counsel's cross-examination amounted to ineffective assistance of counsel. *State v. Whitfield*, 939 S.W.2d 361, 370 (Mo. banc 1997). Trial counsel did cross-examine the witness, and even though hindsight might indicate some of the matters of previous inconsistent statements could have been more fully explored, there has been no showing of a reasonable probability that had such approach been utilized a different verdict would have been the result. Id. Counsel here was faced with a witness who steadfastly and consistently stated he had made eye contact with the defendant who was driving the car immediately after the shots were fired in the immediate vicinity of the killing, and counsel was stuck with his client's admission of having made eye contact with Wells. The defendant's theory was that he lived in the neighborhood, and only went out after hearing the shots, and that it was then that Wells saw him and the car. With the defense that Parker was simply passing through the neighborhood just after the shooting, any further impeachment of Wells would have

gained little and was probably unnecessary. *State v. Phillips*, 940 S.W.2d 512, 524 (Mo. banc 1997). Had the defense been that Parker was not in the area and did not drive the car, then this point would take on a different slant. However, the car was identified, it was seen by Wells who directed the officer where it went, and Wells immediately directed the police to Parker's home, where Parker ran upon seeing the police. In addition, Bolton identified the car Parker was seen in as the one from which the shots were fired. There was also testimony regarding the defendant and the murdered girl's father's previous altercations. Given this evidence, Parker cannot meet the second prong for relief under 29.15.

Parker also faults trial counsel for failure to determine the exact address of Wells' grandfather's house and to then accurately measure the distance to the intersection where he saw Parker driving the suspect vehicle. His point is that Wells could have been effectively cross-examined to show the jury it would have been impossible for Wells to have run from the driveway of his father's home to 62nd and Walrond in the time it took to make contact with the car when it was at the intersection. Parker cites *Moore v. State*, 827 S.W.2d 213, 214—16 (Mo. banc 1992), for the proposition that failure to introduce a single piece of evidence may cast a shadow on the case and call the outcome into question. Such is not the situation here. How Wells got to the intersection, or where he started from, under these facts, really made no difference. As stated in the other point, defense counsel was faced with three prior identifications by Wells that were under oath and, consistent with his trial testimony that he saw Parker at the corner immediately after the sound of shots had ended, and that Parker had admitted to having had eye contact with Wells at the corner. Further, as to the contention this could have severely damaged Wells' stature before the jury, the record shows that at trial Wells had difficulty spotting his house on the map, and could never place his finger on the map to show where his father actually lived. Several times during the Wells' testimony he was asked to talk so the jury could understand him, and at one point the prosecutor asked him if he had something in his mouth, and out of the hearing of the jury, if Wells were on drugs. Further cross-examination of Wells would have gained little, given Parker's theory of defense, and would have had little effect, if any, in damaging Well's credibility more than Wells himself already had. This point is denied.

The direct appeal is dismissed. The judgment of the motion court is affirmed.

All concur.