Larry SCHAAL, Movant–Respondent,

v.

STATE of Missouri, Respondent–Appellant.

No. 26798.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 30, 2005.

Dean G. Dankelson, Prosecuting Attorney, Nathaniel D. Dally, Assistant Prosecuting Attorney, Joplin, for appellant.

Mark A. Grothoff, Columbia, for respondent.

KENNETH W. SHRUM, Presiding Judge.

Larry Schaal ("Movant") sought post-conviction relief via a Rule 29.15 motion after he was convicted of rape (§ 566.030.3).[1] After an evidentiary hearing, the motion court made findings of fact and reached conclusions of law that reproduced essentially what Movant's post-conviction lawyer alleged in an amended Rule 29.15 motion. With that as its basis, the

---

1. All rule references are to Supreme Court Rules (2005), unless otherwise stated. All statutory references are to RSMo (1986), unless otherwise shown.

motion court vacated Movant's conviction and sentence and ordered a new trial. The State appeals. This court reverses and remands in part.

## FACTS

Movant was convicted of raping a child ("Victim") when she was seven years old. He was first convicted of this crime in October 1987 and sentenced to a thirty-year prison term. The first case was affirmed in *State v. Schaal*, 806 S.W.2d 659, 669 (Mo.banc 1991), as was the denial of his initial post-conviction motion.

Movant then sought habeas corpus relief in federal district court. The district court held that the State's use of a videotaped interview of Victim in Movant's 1987 trial violated his Confrontation Clause rights and ordered a new trial. This decision was affirmed in *Schaal v. Gammon*, 233 F.3d 1103 (8th Cir.2000).[2]

Movant's new trial began in June 2001, nearly fifteen years after Movant was first charged. By then, Victim was twenty-two years old. She testified that in 1986, Movant was dating Victim's mother ("Mother"). Initially, Movant was friendly toward Victim and acted as a "father figure," but Victim ultimately began to feel uncomfortable with Movant and was afraid of him. Because of this, Victim objected when Mother proposed leaving her with Movant at his house on the day of the rape. She was left there, however, and after she bathed, she went to the living room to get her pajamas. She had wrapped herself in a towel and when she would not remove the towel as Movant instructed, he (Movant) took away the towel and raped her.

In the June 2001 trial, defense counsels' efforts were to plant reasonable doubt in the jurors' minds about the crime's occurrence. This was done in two ways. First, they focused on inconsistencies in Victim's testimony, namely, discrepancies between her at-trial testimony in 2001, her 1986 and 1987 statements to Mother and DFS workers, and her 2001 deposition testimony. Second, they adduced evidence that Victim and Mother became angry and upset with Movant when, shortly before the rape allegation surfaced, Movant ended the relationship between Mother and him. Via the latter, the defense implicitly suggested there was a revenge motive and that Victim made up the rape story, either acting on her own or at Mother's suggestion. As one defense lawyer explained it, "My strategy ... [was] to get an acquittal[ ]" by showing "fabrication."

The jury convicted Movant and he was sentenced as a persistent sexual offender to thirty years' imprisonment. The resultant judgment was affirmed in *State v. Schaal*, 83 S.W.3d 659 (Mo.App.2002).

Movant then filed a timely motion per Rule 29.15 seeking post-conviction relief. A court-appointed lawyer filed an amended motion, alleging Movant's criminal lawyers were ineffective for failing to call certain witnesses and use their testimony to impeach Victim's credibility. The motion also alleged that his defense lawyers were constitutionally ineffective in their cross-examination of Victim; they did not adequately demonstrate the inconsistencies in her several accounts of the rape. Finally, Movant's post-conviction lawyer incorporated part of Movant's *pro se* motion in the amended motion.

After an evidentiary hearing, the motion court ruled favorably to Movant, vacated the sentence and judgment, and ordered a new trial. In doing so, the motion court

**2.** The eight circuit court ordered Movant released from custody "unless the State com-mences a new trial within a reasonable time." *Id.* at 1108.

purported to fulfill its duty to make findings and conclusions on Movant's "failure to impeach" allegations by essentially reproducing what Movant had alleged in his amended Rule 29.15 motion (at least as to all but one of those claims). As to Movant's other allegations, the court disposed of them thusly: "[M]ovant asserts other grounds which this court finds are meritorious. Given the Court's findings above, these paragraphs are not discussed at length."

This appeal by the State followed.

## STANDARD OF REVIEW

In a post-conviction case, an appellate court must affirm the rulings of the motion court unless it appears that its findings, conclusions, and judgment are "clearly erroneous." Rule 29.15(k); *Johnson v. State*, 102 S.W.3d 535, 537[1] (Mo. banc 2003). A motion court's findings and conclusions are clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm impression that a mistake has been made. *Id.* at 537–38[2]. These standards apply whether the movant or the state appeals. *Laney v. State*, 584 S.W.2d 411, 413 (Mo. App.1979).

To prevail on a claim of ineffective assistance of counsel, a movant must show: First, that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). This prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

If a movant fails to satisfy either the performance or the prejudice prong of the *Strickland* test, then an appellate court need not consider the other, and the movant's claim must fail. *Vogel v. State*, 31 S.W.3d 130, 135[3] (Mo.App.2000). Review of the motion court's judgment focuses upon whether the alleged error caused Movant to suffer a genuine deprivation of his right to effective assistance of counsel, such that our confidence in the fairness of the trial is undermined. *Wolfe v. State*, 96 S.W.3d 90, 93[6] (Mo.banc 2003).

## DISCUSSION AND DECISION

The State's first point relied on maintains the motion court clearly erred when it ruled Movant's trial lawyers were constitutionally ineffective for not calling certain witnesses and by not adequately cross-examining Victim. The essence of the State's argument is that Movant's lawyers clearly made acceptable trial strategy choices regarding these matters and that, in any event, Movant was not prejudiced by the alleged deficient conduct.[3]

3. Movant argues that the State's points relied on fail to comply with applicable briefing rules which preserve nothing for appellate review. This court agrees; however, we have decided to exercise our discretion pursuant to Rule 84.13. "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has

resulted therefrom." Rule 84.13(c). Further, we note that the Missouri Supreme Court has adopted the policy that, as a general rule, a case should be decided upon its merits rather than on technical deficiencies of a brief. *Christeson v. State*, 131 S.W.3d 796, 799 n. 5[6] (Mo.banc 2004). The State's brief is not so deficient that it fails to give notice to this court or to Movant as to the issues presented,

■ We start our review mindful that "the findings of fact and conclusions of law of the motion court are presumptively correct." *State v. Gilpin*, 954 S.W.2d 570, 575[1] (Mo.App.1997) (citing *Wilson v. State*, 813 S.W.2d 833, 835 (Mo.banc 1991)). On the other hand, the presumption of "correctness" is offset here by the motion court's questionable practice of making findings of fact and conclusions of law by merely repeating whatever Movant alleged in his Rule 29.15 motion.

In pertinent part, Rule 29.15(j) mandates that a motion court "issue findings of fact and conclusions of law on all issues presented." Early on, the Supreme Court of Missouri made it clear that "[s]pecific findings and conclusions are contemplated and required" in post-conviction cases, and only "if that is done can the appellate court make the kind of review contemplated" for post-conviction cases. *Fields v. State*, 572 S.W.2d 477, 483 (Mo.banc 1978). An order that purports to comply with Rule 29.15(j) by merely referencing one of the parties' pleadings, although not per se clearly erroneous, is of doubtful utility. *Leady v. State*, 714 S.W.2d 221, 222[1] (Mo.App. 1986).

In another context where the propriety of a court using a party's proposed findings and conclusions was addressed, it has been said that so "long as the court thoughtfully and carefully considers the parties' proposed findings and agrees with the content, there is no constitutional problem with the court adopting in whole . . . the findings of fact and conclusions of law drafted by one of the parties." *State v. Kenley*, 952 S.W.2d 250, 261[4] (Mo.banc 1997). It is axiomatic, however, that the findings and conclusions must be supported by the evidence. *Id.*

## Point I: Failure to Call Witness Brennfoerder

■ The State maintains, *inter alia*, that the motion court clearly erred when it found Movant's criminal lawyers ineffective for failing to call Bonnie Brennfoerder as a witness. On that issue, Movant alleged and the motion court essentially found that

"Bonnie Brennfoerder would have testified if called that she and her husband visited movant and [Mother] with Kevin Kline [a preacher at a church attended by these persons] prior to the allegations being made in this case. *Kevin recommended to them that they not marry,* and Bonnie agreed. Movant also agreed that marriage was not a good idea. [Mother] became upset *and stated she did not want the relationship to end.* [Mother] expressed hurt and anger at movant *and stated she was going to make movant 'pay' for not marrying her;* Ms. Brennfoerder's testimony would have supported movant's *desired defense theory that the alleged victim had been led to fabricate her allegations by her mother* because movant had ended any marriage plans. Movant provided Bonnie Brennfoerder's name to counsel as a possible witness prior to movant's trial, and Mrs. Brennfoerder was willing and able to testify to the foregoing. No reasonable trial strategy could account for the failure to call Mrs. Brennfoerder. Reasonably competent counsel would have called Mrs. Brennfoerder to testify at movant's trial. Had she done so, a reasonable probability existed of a different result at movant's trial." (Emphasis supplied.)

At the post-conviction hearing, Brennfoerder was called as a defense witness. In relevant part, she testified to the follow-

nor has the brief impeded a disposition on the merits. *Id.* at 802[7].

ing. At one time, she was a co-worker with Movant. At an undisclosed date, but before Movant was accused of the rape, Brennfoerder attended a meeting where the topic was "the future of the [dating] relationship" between Movant and Mother. Brennfoerder went to the meeting at the request of Kevin Kline, a preacher. Both Movant and Mother were present, as was Kline and Brennfoerder's husband. Brennfoerder's testimony included this:

"Q. [W]hat did you think the future of their relationship was?

"A. [by Brennfoerder] The relationship, to me, looked like it didn't have a future, and it wasn't probably good for them to be together.

"Q. Did you make any recommendations [to] that that end?

"A. At that point I thought it was—and I can't remember exact words as to what I said at that moment, but they needed to break off and rethink things and see if their future was together, and it didn't look like to me it should have been."

Brennfoerder also testified that after expressing her opinion about the future of the relationship, Mother became "angry" and "upset," specifically she appeared to be angry at Movant once he agreed that "marriage perhaps was not a good idea." This information was given to Movant's lawyers when they contacted Brennfoerder before Movant's 2001 trial. Moreover, Brennfoerder was subpoenaed for Movant's 2001 trial, but his lawyers opted not to present her testimony.

By using Movant's allegations as its findings, the motion court found, *inter alia*, "[*Mother*] . . . *stated she did not want the relationship to end* [ ]" and "*she*

was going to make the movant 'pay' for not marrying her."[4] From this, the motion court reasoned that this "testimony would have supported movant's desired defense theory that the alleged victim had been led to fabricate her allegations by her mother because movant had ended any marriage plans."

The clear error in this finding is that Brennfoerder's testimony did not include what the motion court ascribed to her: Brennfoerder did not testify that Mother "*stated she did not want the relationship to end*," nor did she testify Mother had said "*she was going to make the movant 'pay' for not marrying her.*" Although those findings are the cornerstone of Movant's allegations of what he claimed was his "desired defense theory," they simply are not in the record. As such, Movant's allegation *and* the trial court's finding about his "desired defense theory" are clearly erroneous, as is the motion court's conclusion that "a reasonable probability existed of a different result at movant's trial" had Brennfoerder been called as a witness.

■ Moreover, by simply adopting Movant's conclusory allegation of prejudice, the motion court made no analysis and provided this court with no reasons for its conclusion that "a reasonable probability existed of a different result at movant's trial" had Brennfoerder testified. Specifically, Movant never alleged nor did the motion court find that the jury could reasonably have inferred that Mother's anger toward Movant would have somehow led to Victim fabricating a rape story. That was an essential but omitted element of Movant's claim regarding ineffectiveness for

---

4. The court also clearly erred when it found that preacher Kline "recommended to them [Movant and Mother] that they not marry." Brennfoerder did not testify that Kline made such a recommendation, nor did Kline's testi-mony at the criminal trial include such a statement. This is another example of the doubtful utility of the wholesale use of a movant's allegations as the basis for a motion court's findings.

not calling Brennfoerder. Moreover, "we are not permitted to supplement the record by implication from the motion court's ruling." *Clayton v. State*, 164 S.W.3d 111, 115[3] (Mo.App.2005). "Absent findings explaining the motions court's actions we cannot discern the reasons for the motion court's decision and we are left with conclusory statements and nothing to review." *Id.* We are left in the dark as to the reason for the motion court's action and have been presented nothing of substance to review with regard to the prejudice prong of the analysis. *See Holloway v. State*, 764 S.W.2d 163, 165[2] (Mo.App.1989).

Even so, we need not include this issue as a part of what the motion court must address on remand. *Cf. Clayton*, 164 S.W.3d at 116. This follows because Brennfoerder's testimony was merely cumulative of similar testimony from other witnesses, namely that sometime before Victim reported the rape, Mother had expressed anger and hurt at Movant for ending their relationship. *See Williams v. State*, 168 S.W.3d 433, 441[161] (Mo.banc 2005) (holding counsel not ineffective for deciding not to introduce cumulative evidence).[5]

In sum, the motion court's finding that there was a reasonable probability of a different result at Movant's trial had Brennfoerder been called as a witness is clearly erroneous. Movant did not sustain his burden of proof as to this allegation. This part of the State's point has merit and is granted.

## Point I: Failure to Call Witness Conover

■ In another argument, the State maintains the motion court clearly erred when it found there was a reasonable probability of a different result at Movant's criminal trial if Marion Conover had been called as a witness. Movant had alleged Conover's testimony was critical in that he could identify four hand-drawn pictures made by Victim in which Victim declared her love for Movant. As it did with most of Movant's other allegations, the court dealt with the "Conover claim" by simply reproducing the relevant part of what Movant alleged in his motion. This reads as follows:

"At trial, alleged victim ... testified that she was relieved when her mother broke up with movant, and that she did not like movant the last month of the relationship before movant and [Victim's] mother broke up. At her 2001 deposition, [Victim] identified three drawings declaring love for movant as drawings done by her, though she could not recall when they were done. Movant's counselor Marion Conover testified at the evidentiary hearing that these drawings were given to him to relay to movant after the break-up of movant and [Victim's] mother on November 2, 1986, and he presented it to movant during a counseling session on November 6, 1986. Reasonably competent counsel would have presented these cards at movant's trial and called Marion Conover to establish the foregoing and to negate [Victim's] trial testimony. Trial counsel identified no reasonable trial strategy [that] could account for the failure to do so. This Court finds that, had Mr. Conover been called to testify to the foregoing, a reasonable probability would have existed of a different result at movant's trial. Movant has sustained his burden on this allegation."

---

5. This "anger and hurt" evidence was cumulative in the same sense that the "drug addiction," "prostitution," and "reward" evidence was cumulative in *Williams*, 168 S.W.3d at 441.

The motion court's conclusion on this is clearly wrong because of the absence of evidence about when the drawings were made. Victim testified at trial that when Mother began dating Movant, he (Movant) was her "friend;" that he took her out "for ice cream," to the "Wal–Mart type store" and bought her "stuffed animals," and was "like a father figure" to her. If Movant made the drawings and expressions of endearment during that earlier period, they would not have served to negate Victim's at trial testimony about being relieved when her mother broke up with Movant and that she did not like Movant the last month of the relationship. The drawings would only have served to impeach Victim's testimony about her dislike of Movant if the drawings were made during the last month of the relationship between Movant and Mother.

To meet his burden of proving ineffective representation for failing to call Conover, Movant had to allege and prove *when* Victim made the drawings as part of this ineffective assistance claim. He failed in both respects.[6] Consequently, the trial court clearly erred when it found that there was a reasonable probability of a different outcome on Movant's criminal trial if Conover had been called as a witness. This part of the State's point has merit and is granted.

### Point I: Failure to Adequately Cross–Examine Victim

■ Another allegation by Movant (which the motion court essentially repeated as its findings) was that Movant's trial lawyers "unreasonably failed to dem-

onstrate at trial the significant discrepancies in [Victim's] trial testimony and previous deposition testimony as to how and when she got to movant's residence before the alleged rape and what had been done with the towel she had been wearing." The motion court found Movant had "sustained his burden on this allegation," but did so without any specific mention of the prejudice prong or analysis thereof.

Proof that counsel's alleged deficient performance prejudiced the defense was an essential element of Movant's case, *Strickland,* 466 U.S. at 687–88, 104 S.Ct at 2064–65, and the absence of any prejudice analysis leaves nothing for our review. *Holloway,* 764 S.W.2d at 165[2]. As noted earlier, "we are not permitted to supplement the record by implication from the motion court's ruling." *Clayton,* 164 S.W.3d at 115[3]. The trial court clearly erred when it ruled Movant "sustained his burden" on the "deficient cross-examination of Victim" allegation without fully complying with Rule 29.15(j).

Since we cannot determine the reason for the motion court's implicit finding that Movant was prejudiced by the alleged failure to more vigorously cross-examine Victim, the motion court shall, on remand, issue findings of fact and conclusions of law on this issue as required by Rule 29.15(j).

### Point I: Failure to Call Witness Joyce Smith

■ Another allegation by Movant (which the motion court essentially adopted verbatim) was that defense coun-

---

**6.** Even a cursory reading of Conover's testimony reveals the utter lack of value he would have provided to the defense. At one point, he claimed that Victim gave him the pictures. Later in his testimony, he claimed to have received the pictures from Kevin Kline, Movant's minister, to give to Movant. When asked if he knew when the pictures were drawn, Conover replied, "No. Not exactly." In a deposition, Victim testified that they were "probably" done before the rape occurred because she liked Movant when he first began dating Mother.

sel was constitutionally ineffective for not calling Division of Family Services ("DFS") worker Joyce Smith to testify at Movant's criminal trial. Specifically, Movant alleged and the motion court found:

> "[Victim] testified at movant's trial that she was sexually assaulted by movant when staying overnight at his residence in the fall of 1986.... Joyce Smith testified she was a social worker with Jasper County Family Services in 1987. She ... investigated the allegations against movant. Joyce Smith would have testified that the alleged victim's mother told her that she *never* found blood or other discharge in the alleged victim's underpants. At trial, [Victim] stated she had blood on her underwear which her mother found. [Victim's] mother ... said she found bloody underwear the night after the alleged victim had spent the night at movant's house. *Ms. Smith's testimony on this important point would have completely refuted the story of the state's main witnesses.* Ms. Smith's report, which included the foregoing information, was included in the discovery provided to the defense.... [H]ad Ms. Smith been called to testify to the foregoing, a reasonable probability would have existed of a different result at movant's trial. Movant has sustained his burden on this allegation." (Emphasis supplied.)

The State insists the trial court clearly erred in its decision on this issue. This court agrees.

First, the court's characterization of Mother as one of "the state's main witnesses" shows that this issue, (failure to call Smith as a witness), did not receive thoughtful and careful consideration. Mother *was not* called by the State as its witness. All of Mother's testimony was proffered by Movant, including Mother's account of (1) finding blood in Victim's underwear after Victim stayed all night alone with Movant, and (2) what Victim ultimately told Mother about the rape.

Second, while it is true that the unoffered evidence via Joyce Smith may have been admissible both for impeachment and as substantive evidence supportive of Movant's defense, the motion court clearly erred in its conclusion that Smith's testimony would have "*completely refuted* the story of the state's main witnesses." (Emphasis supplied.) That simply is not true.

The central, controverted issue was whether Movant had sexual intercourse with Victim when she was age seven years. Regarding the rape, Victim testified that in the fall of 1986 (when she was age seven), Movant grabbed her, laid her on the floor, and "placed his penis inside my vagina" for "a couple minutes." Mother's account of what Victim ultimately told her (evidence Movant introduced) was consistent with Victim's testimony at trial, namely, Mother testified Victim told her that as Victim entered the kitchen, Movant "made her take the towel off, and laid her on the floor ... and stuck his penis inside her."

Contrary to what the motion court concluded, Smith's testimony that Mother denied seeing blood in Victim's underwear *would not have completely refuted* Victim's testimony about the essential elements of the crime charged. Nor would Smith's testimony have *completely refuted* Mother's testimony about what Victim recounted to her in 1986 about the rape.

Third, Joyce Smith had no independent recollection of this incident when she was deposed September 29, 2003. Accordingly, she relied entirely on her December 5, 1986, report to refresh her recollection of what she was told in a November 18, 1986, interview of Mother, Victim, and Victim's sister. When asked what Mother said in 1986 about Victim's underwear, Smith answered: "According to my report I asked

mom if she had seen anything, blood or a type of discharge, in the children's underwear, and she indicated she had not, but I did not ask her if she actually did the children's laundry. *That was a big error on my part.*" (Emphasis supplied.) Later in the deposition, Smith repeated that she failed to ask Mother about doing the laundry.

This testimony tended to mitigate or call into question the completeness of Smith's investigation. It also tended to confirm defense counsel's assessment of Smith, in that she "was a little hostile" to the defense. From the foregoing, we find additional confirmation that the motion court clearly erred when it ruled Smith's testimony completely refuted the story of the State's main witnesses.

Fourth, the jury knew there were testimonial discrepancies regarding Victim's bloodied underwear. For instance, Victim testified during direct examination that when she got home after Movant had raped her, she hid her bloody underwear to keep Mother from seeing them and thinking something was wrong; that Movant threatened to kill Mother if Victim told Mother about the rape. She testified that "it was a few weeks" before she told anyone about the rape, and she stopped associating with her friends because she felt different after the rape. In contrast, Mother testified that she noticed blood in Victim's underwear "the next day" after Victim spent the night alone with Movant.

Similarly, Victim was cross-examined about testimonial discrepancies regarding her motive for hiding the underwear. The following is an example:

"Q. [To Victim] [J]ust a minute ago you told us you hid the underwear so your mom wouldn't find it because you were afraid [Movant] would kill her. A couple weeks ago you told me that you weren't scared if she found it, and she found it then. Can you tell us which is correct?

"A. I hid it at first and she found it, and it was in the laundry.

"Q. Were you afraid she would find it?

"A. I was afraid she would find it and think something was wrong.

"Q. So when you told me a couple of weeks ago that you were afraid, and you said no, that would be incorrect?

"A. Right."

These and other discrepancies in Victim's and Mother's stories about bloody underwear diminished any favorable impact Smith's testimony would have given Movant's defense and supports our belief that the motion court clearly erred in finding Smith's testimony "completely refuted the story of the state's main witnesses."

Based on the foregoing, we find that Movant suffered no prejudice by the failure to call Smith as a witness at trial and testify to Mother's statement. We hold there is no reasonable probability that the result of Movant's criminal trial would have been different had this evidence been presented to the jury, and the motion court clearly erred when it ruled otherwise. This prong of the State's point is granted.

### Point I: Failure to Call Witness Greninger

■ In yet another argument, the State charges that the motion court clearly erred when it ruled that Movant's criminal lawyers were ineffective for not calling Jan Greninger as a witness at his criminal trial. Greninger was a DFS worker who interviewed Victim on December 4, 1986, about Movant's abuse of Victim.

As before, the motion court purported to fulfill its Rule 29.15(j) duty to make findings and conclusions by adopting what Movant alleged regarding defense coun-

sel's failure to call Greninger. Specifically, Movant alleged and the court found:

"At trial [Victim] stated that movant had told her to take a bath and when she got out she was dressed only with a towel. She found movant in the kitchen wearing only shorts and socks. In a deposition a few weeks before trial, she said movant was wearing red shorts. She then said that shorts and boxers look alike to a seven year old child. Ms. Greninger ... testified that [Victim] told her that, when she left the bathroom and came into the kitchen, movant was wearing white bikini underwear and white socks with gold stripes. ([Victim] did not have a recollection of making such a statement at trial). Victim testified at trial that movant told her to take off the towel in the kitchen, and when she refused, he grabbed the towel and spun her. She told Ms. Greninger that movant had 'started tickling her and he pulled the towel off [her] and told her she had a tick on her vagina. ([Victim] was not asked at trial about this prior statement).

"Victim testified at trial that once on the floor, movant placed one hand on her chest and took his shorts off with the other hand. Ms. Greninger testified that [Victim] told her that "he laid her on the floor [and] stood up and took his underwear off." ([Victim] was not asked about this statement at trial.) [Victim] stated that she cried when movant vaginally penetrated her because it hurt. Ms. Greninger testified [Victim] told her that she was more scared than hurt. ([Victim] did not recall making this statement at movant's trial).

"[Victim] did not indicate at trial that she had resisted. At her 2001 deposition, she stated that she had not kicked movant. Ms. Greninger testified [Victim] told her that she had 'kicked [movant] and he pulled his penis out with his

hand.' ([Victim] was not asked about this inconsistency at trial).

"At trial, [Victim] said that after the intercourse she went in the bathroom and stayed there for a period after she dressed. She came out because movant said they needed to talk. When she did, movant had a gun and stated he would kill [Victim's] mother if [Victim] told her mother what occurred. Ms. Greninger testified that, in her statement to her, [Victim] stated that movant, after removing his penis, '[t]hreatened her saying "I'll kill your mom if you tell." He then got up and went to his bedroom and put on some underwear.' [Victim] 'went to the living room and put on her clothes.' [Victim] was asked only about a portion of the foregoing at trial, but did not recall saying it."

Having adopted Movant's allegations as its findings of fact, the motion court then accepted the following conclusory allegations found in Movant's motion: Victim's statement to Greninger *"substantially differed from her trial and deposition testimony;"* that *"[r]easonably competent counsel would have called Ms. Greninger to testify to the foregoing;"* and *"had Ms. Greninger been called to testify to the foregoing a reasonable probability ... existed of a different result at movant's trial."* (Emphasis supplied.)

We agree that Greninger's testimony would have revealed some inconsistencies between what Victim told Greninger in 1986 and what she said in 2001. The motion court clearly erred, however, when it concluded that defense counsel was ineffective for not calling Greninger for the purpose of bringing the inconsistencies to the jury's attention. To find on this record there was a reasonably probability that the trial result would have been different had Greninger been called was un-

reasonable and so clearly against the logic of the circumstances that it reflects a lack of careful consideration of the issue. Our review of the entire record has left this court with the definite and firm impression that the motion court made a mistake in this ruling.

First, although Greninger's testimony would have established the inconsistencies listed, her testimony would necessarily have repeated and emphasized that Victim's story about the essential elements of the crime was consistent and never changed; Movant "laid her on the floor" and "vaginally penetrated her" with his penis. This is a significant factor in any analysis of whether prejudice resulted from failing to call a witness. *See State v. Parker,* 972 S.W.2d 508, 511–12 (Mo.App. 1998) (holding no prejudice on failure to impeach "more fully" with prior inconsistent statement because witness was steadfast and consistent on most important parts of testimony).

Second, the motion court clearly erred when it concluded that Movant's defense could have been aided by proving Victim's 1986 statement that she "was more scared than hurt" by Movant and then contrasting it with her 2001 testimony that she "cried when movant vaginally penetrated her because it hurt." Assuming this inconsistency had been proven and brought to the attention of the jury, it could only have highlighted the trauma inflicted on Victim; when interviewed at age seven about the rape Victim's most vivid impression was fear, whereas fifteen years later as an adult, the memory of physical pain was paramount in her mind.

Third, it was equally illogical and clearly erroneous for the motion court to conclude Movant's defense would have benefited by showing (via Greninger) that in 1986 Victim said she "kicked [movant] and he pulled his penis out with his hand," where-

as her 2001 testimony was that she never kicked him (deposition), or she made no mention of resistance (at trial).

Assuming these inconsistencies had been proven and argued to the jury, it could only have hurt the defense. Testimony that Victim (at age seven) claimed she had kicked Movant *while he was raping her* would have clearly strengthened the State's case. " 'The prior statement is always nearer and usually very much nearer to the event than is the testimony. The fresher the memory, the fuller and more accurate [any statement] is.' " *Lindsay v. Mazzio's Corp.,* 136 S.W.3d 915, 922 (Mo. App.2004) (quoting McCormick, Handbook of the Law of Evidence, § 251, at 745 (3d ed.1984)). The principle espoused by the *Lindsay* court takes on added significance here since Movant admitted to the jury (during questioning about her testimonial inconsistencies) that her memory was better in 1986 than at trial (2001).

Fourth, the trial court clearly erred when it found Movant's lawyers ineffective for not calling Greninger to prove a discrepancy between Victim's 2001 account of Movant's threats to kill Mother and Victim's 1986 statement on that subject. The analysis in the preceding paragraph is equally apropos here. It defies logic and reason to conclude that Movant's defense would have been aided (much less successful) by proving that in 1986 (when Victim's memory was admittedly better) she told Greninger that Movant threatened to kill Mother as he pulled his penis from her vagina, whereas in 2001 she testified Movant threatened to kill Mother after Victim went to the bathroom and dressed. On this record, proving the discrepancy about when Movant threatened to kill Mother and arguing that discrepancy to the jury could only have hurt the defense. We are left with the definite and firm impression

that the motion court made a mistake in its ruling on this issue.

Fifth, we have recounted verbatim the motion court's findings to illustrate that most of the discrepancies cited as showing "ineffective assistance" are minor and insignificant. For instance, Greninger's 1986 report quoted Victim as saying Movant was wearing "white bikini underwear and white socks with gold stripes," whereas at trial (some fifteen years later) Movant testified he was wearing "shorts and socks." This inconsistency was unimportant in this case. It also defies common sense and is clearly against the logic of the circumstances to say his defense would have been aided by proving that in 1986 Movant disrobed her by "tickling her and ... pull[ing] the towel off," whereas in 2001 she testified "he grabbed the towel and spun her."

Contrary to what the motion court found, Movant did not prove he was prejudiced by the failure to call Greninger as a witness. *See, e.g., White v. State,* 939 S.W.2d 887, 897 (Mo.banc 1997) (holding, "[m]any inconsistent statements are so insignificant as to be meaningless and others are so easily explainable as to not justify being presented at trial"); *State v. Werneke,* 958 S.W.2d 314, 319 (Mo.App.1997) (holding it is not uncommon for child sex abuse victims' testimony to contain some variations, contradictions, and lapses in memory). The *Werneke* court's observation is particularly poignant here as this criminal case was tried fifteen years after the rape of a seven-year-old victim. Moreover, defense counsel did bring out and highlight many inconsistencies in Victim's testimony, yet the jury convicted Movant after only fifteen minutes of deliberation. *Cf. Black v. State,* 151 S.W.3d 49, 58 (Mo. banc 2004) (holding the relative strength or weakness of the prosecution's case is significant in deciding if any deficiencies in

trial counsel's performance was prejudicial).

In sum, the trial court clearly erred when it ruled that the failure to call witness Greninger was fatally prejudicial to Movant's criminal trial. This prong of the State's point has merit and is granted.

## Point II: Findings and Conclusions on Pro Se Claims

 In its judgment, the motion court addressed Movant's claims from his *pro se* motion that were attached to his amended motion. The motion court found: "As additional claims from his pro se motion, in paragraphs 8–9(g)–(p), movant asserts other grounds which this court finds are meritorious. Given the Court's findings above, these paragraphs are not discussed at length."

Obviously, the motion court's judgment on these claims does not comply with the dictates of Rule 29.15. Meaningful appellate review is premised upon sufficiently specific findings of fact and conclusions of law that respond to the movant's claims. *Day v. State,* 143 S.W.3d 690, 692 (Mo. App.2004). A motion court cannot simply conclude that certain allegations of a Rule 29.15 have merit. To do so would thwart appellate review. Because the court's judgment contains no findings of fact or conclusions of law on these issues, the judgment is reversed, and the case is remanded for the motion court to issue such findings and conclusions on Movant's *pro se* claims. The court is free to hear additional evidence if it chooses.

The motion court's judgment granting post-conviction relief to Movant is reversed and remanded in part. The case is remanded to the motion court for the limited purpose of issuing findings of fact and conclusions of law on (1) Movant's allegation that his trial lawyers were ineffective for failing to adequately cross-examine

Victim and (2) Movant's *pro se* allegations attached to his amended motion. In all other respects, the motion court's judgment is reversed.

GARRISON, J., and BATES, C.J., concur.