

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **ADAM D. BRIDGEWATER,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD75421** |
| | ) | |
| **v.** | ) | **OPINION FILED: January 13, 2015** |
| | ) | |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Vernon County, Missouri**
The Honorable Gerald D. McBeth, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Adam Bridgewater ("Bridgewater") filed a motion to recall mandate on

October 24, 2014 ("Motion"). An exhibit attached to the Motion was missing from trial

counsel's file at the time of Bridgewater's Rule 24.035 hearing and is material to his claim

of ineffective assistance which alleged that trial counsel affirmatively misrepresented that

Bridgewater would receive a single life sentence[1] if he pleaded guilty. The motion

court's judgment denying the claim of ineffective assistance of counsel relied exclusively

---

[1]Bridgewater's use of the phrase "a single life sentence" has plainly been intended to refer to a cumulative sentencing structure with concurrent sentences that would result in a single term of life imprisonment.

on a credibility determination favoring trial counsel's testimony that appears to be inconsistent with the exhibit attached to the Motion. And Bridgewater's guilty plea hearing does not plainly refute his claim of prejudicial reliance on trial counsel's affirmative representation. We therefore recall our mandate issued November 20, 2013; withdraw our order/memorandum dated September 10, 2013; vacate the motion court's judgment in the Rule 24.035 proceeding; and remand this matter to the motion court for further proceedings consistent with this Opinion.

## Factual and Procedural Summary

Bridgewater was charged as a prior offender with four counts of the class A felony of assault of a law enforcement officer in the first degree in violation of section 565.081[2] and four associated counts of armed criminal action in violation of section 571.015. The information alleged that, on or about March 16, 2007, Bridgewater knowingly fired a gun at Officer Dan Cook, a Neosho police car driven by Officer Mike Sharp, and a Highway Patrol car driven by Trooper Grant Hendrix. Bridgewater was twenty years old at the time of the offense.

On September 24, 2008, Bridgewater pleaded guilty to three counts of assault of a law enforcement officer and the three associated counts of armed criminal action. The written plea petition reflected Bridgewater's agreement that:

> 3. I received a copy of the information (charge against me). I read the information and have discussed it with my attorney. My attorney explained every charge to me and I understand that I am charged with *4 counts of 1st degree assault on law enforcement officer & 4 counts armed criminal action*. I understand the nature of the charge against me and my lawyer

---

[2]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

informed me that the range of punishment which the law provides is *10* to *30 or life on the assaults and minimum 3, no maximum on armed criminal action*.

(Emphasized material is handwritten on document). The written plea agreement reflected Bridgewater's understanding that the State would, in exchange for his plea, dismiss "Counts VII & VIII," (the fourth charge of assault of a law enforcement officer and its associated armed criminal action charge), and other pending but unrelated traffic and criminal charges except an arson charge. The written plea agreement expressed Bridgewater's understanding that "[a]ny sentence received on the arson charge would be designated to run concurrent."

A guilty plea hearing for the assault and armed criminal action charges was conducted on September 24, 2008. During this hearing, Bridgewater testified that he had seen a copy of the amended information and that he understood the charges against him. Bridgewater testified that he understood that as to "each count of first degree assault on a law enforcement officer, the range of punishment is minimum of 10, maximum of 30, or life." Bridgewater also testified that he understood that as to "each count of armed criminal action, the minimum sentence is three years and the maximum sentence is not set forth in the statute, and therefore there is no maximum." Bridgewater was not asked by trial counsel or the plea court whether he understood that the sentences on each of these six counts could be made to run consecutively.[3]

---

[3]Rule 24.02(b)(1) requires that before accepting a plea of guilty, a trial court must determine that a defendant understands "[t]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Where a defendant is pleading guilty to more than one charge, our Supreme Court has construed Rule 25.04, the precursor to Rule 24.02, to require the trial court to determine that the defendant "is fully informed and correctly understands . . . that he may and will be

3

The trial court found that Bridgewater's pleas were voluntarily and intelligently given with a full understanding of his rights and the effect of his guilty pleas on those rights. After finding that there was a factual basis for the guilty pleas, the trial court accepted Bridgewater's guilty pleas and ordered a Sentencing Assessment Report.

The trial court held a sentencing hearing on January 2, 2009.[4] The officers assaulted by Bridgewater and other witnesses testified. Following the evidence, the State argued that the sentencing court should give Bridgewater "whatever number [of life sentences] the court thinks is justified . . . [and] run everything consecutive." Bridgewater's trial counsel asked the court to follow the Sentencing Assessment Report which recommended either ten years or fourteen years in prison.

At the conclusion of the sentencing hearing, the trial court imposed six life sentences on Bridgewater. The trial court ordered that each life sentence for armed criminal action would run concurrently with the related life sentence for assault of a law enforcement office, and that the three life sentences for assault of a law enforcement

---

sentenced on each and all [of the charges] and the minimum and maximum punishment for each, **and that the sentences may run concurrently or consecutively**," before accepting a guilty plea. *State v. Bursby*, 395 S.W.2d 155, 159 (Mo. 1965) (emphasis added). *See Holland v. State*, 954 S.W.2d 660, 662 (Mo. App. E.D. 1997) (holding that "where a defendant is pleading guilty to *multiple counts*, Rule 25.04 (the predecessor of Rule 24.02) requires the court to inform the defendant that the sentences may be made to run consecutively or concurrently") (citing *Bursby*, 395 S.W.2d at 159; *Wiley v. State*, 522 S.W.2d 41, 43 (Mo. App. 1975) (emphasis in original)).

Bridgewater never asserted in his Rule 24.035 motion, and has thus waived, a claim that his guilty plea was not knowing and voluntary because the plea court failed to comply with Rule 24.02(b)(1). *See Coates v. State*, 939 S.W.2d 912, 915 (Mo. banc 1997) (distinguishing a claim that a trial court failed to comply with Rule 24.02(b)(1) from a claim of ineffective assistance of counsel); *Holland*, 954 S.W.2d at 662, n.2. However, as we explain, *infra*, the lack of any inquiry during the guilty plea hearing verifying that Bridgewater understood that the multiple life sentences he might receive could be made to run consecutively is nonetheless relevant. In the absence of this inquiry, we cannot conclude that the guilty plea record plainly refutes Bridgewater's claim that he reasonably relied on trial counsel's affirmative representation that by pleading guilty he would receive a single life sentence.

[4]On the same date, the trial court first conducted a combined guilty plea/sentencing hearing on the unrelated arson charge and imposed a sentence of seven years to run concurrent with the sentence yet to be imposed on the three assault and armed criminal action counts.

4

officer would run consecutively. As a result, Bridgewater is serving three consecutive life sentences.

Immediately after announcing sentence, Bridgewater was asked by the trial court:

Q: ***Other than discussing this--the plea of guilty with you***, did your attorney communicate any threats or promises to you to induce you to enter your plea of guilty?

A: No, sir.

Q: Are you satisfied with the services rendered to you by [trial counsel] and --and the public defender's office?

A: Yes, sir.

Q: Is there anything you wish to add concerning the--the assistance received from the--your--from your attorney?

A: No, sir.

Q: Is there anything you wish me to consider concerning your representation by your attorney before I determine whether or not probable cause exists to believe that you have received ineffective assistance of counsel?

A: No, sir.

(Emphasis added.)

After he was committed to the Department of Corrections, Bridgewater filed a timely *pro se* Rule 24.035 motion. The trial court appointed counsel, who filed an amended Rule 24.035 motion. The amended motion alleged that Bridgewater's trial counsel was ineffective in that she "misinformed [Bridgewater] that if he pled guilty ***he***

5

***would receive a cumulative sentence structure of life imprisonment*.**"[5]  (Emphasis added.)  The amended motion asserted that but for trial counsel's affirmative misrepresentation, Bridgewater would not have pleaded guilty and would have insisted on proceeding to trial.

The trial court held an evidentiary hearing during which Bridgewater and others testified.  Bridgewater testified that he knew he was entering an open plea on the three assault and related armed criminal action charges, and that he knew a life sentence was possible on each charge, but that his trial counsel assured him that the trial court would impose sentence in a manner that would result in a single life sentence.  Bridgewater testified that he relied on this assurance.  Although Bridgewater knew he would likely serve life in prison by pleading guilty he was willing to plead because by receiving a single life sentence, he would at least have a chance to be released from prison during his lifetime.[6]  Bridgewater testified that he would not have pleaded guilty and would have insisted on going to trial if he had known that he might receive consecutive life sentences--an outcome that ensures he will die in prison, and that is no better than the outcome he could have received had he insisted on going to trial.

---

[5]The amended motion also asserted that Bridgewater's trial counsel was ineffective for refusing to subpoena a witness for the scheduled trial.  Bridgewater abandoned that argument on appeal from the denial of his Rule 24.035 motion.  Our recall of the mandate does not alter this fact.  Thus, the only claim asserted in Bridgewater's Rule 24.035 motion that is affected by our Opinion is the claim of ineffective assistance of counsel based on an affirmative misrepresentation that Bridgewater would receive a cumulative sentencing structure of life imprisonment.

[6]Pursuant to section 558.019.4(1) RSMo 2000, a life sentence is calculated as thirty years for purposes of parole eligibility.

6

Bridgewater's trial counsel testified at the Rule 24.035 motion hearing, in pertinent part, as follows:

> Q: All right. What discussions did you have with [Bridgewater] prior to his plea, as far as what possible sentence he would get?
>
> A: ***I don't have a specific recall of the details.*** And looking through the files that you have shown me, ***it appears that the notes of discussions are missing from those files***. I've--***And without those I couldn't give you specific details***.
>
> Q: Okay. Do you have a recollection of telling him that he would receive one life sentence with everything made concurrent?
>
> A: I don't specifically recall making that representation.
>
> Q: Okay. What did you tell him?
>
> A: Again, ***I couldn't give you specific recall. I could only tell you what it would be my practice to tell a client***.
>
> Q: What would be your practice?
>
> A: My practice would be to tell a client the worst case scenario, which would be-in this case multiple consecutive life sentences. And to tell what our goal was, what we hoped for, which would be to mitigate through a sentencing hearing, and to ask the judge for leniency.

On cross-examination, trial counsel testified that Bridgewater's "initial intent" was to proceed to jury trial, and that she had "tried to get a plea bargain from the State . . . several times," though nothing was forthcoming. Trial counsel indicated that "[a]t some point a few small scraps were offered, in terms of some dismissed charges . . . but nothing that compared to the charges that the State was proceeding on. The State expressly asked trial counsel:

7

Q:    Would it ever be your practice to predict or guarantee somebody that you're representing what they could expect with an open plea?

A:    No.

The motion court denied Bridgewater's Rule 24.035 claim of ineffective assistance of counsel. The motion court found:

> Trial counsel testified at the hearing on this motion that she informed [Bridgewater] that consecutive life sentences were within the range of punishment available to this court at sentencing. Trial counsel further testified that she never indicated to [Bridgewater] that if he were to plead guilty that he would face less than the full range of punishment. This court knows trial counsel to be a thorough and conscientious advocate and finds her testimony to be credible on this point.

The motion court thus found that the affirmative representation claimed by Bridgewater was not made based on a finding that trial counsel's testimony that she followed her customary practice in advising Bridgewater was credible. The motion court's judgment included no other findings related to this claim of ineffective assistance of counsel.

Bridgewater appealed the motion court's judgment and we affirmed in an unpublished memorandum. *Bridgewater v. State*, 412 S.W.3d 400 (Mo. App. W.D. 2013). Our mandate issued on November 20, 2013.

On October 24, 2014, Bridgewater filed this Motion.[7] It sets forth three arguments, each of which relates to Bridgewater's claim of ineffective assistance of counsel arising out of trial counsel's assurance that he would receive a single life sentence if he pleaded guilty. The Motion reflects an attempt to revisit matters litigated and finally

---

[7]We sought and received suggestions from the State in response to Bridgewater's Motion. Unfortunately, the photocopy of the exhibit attached to the State's service copy of Bridgewater's Motion is apparently of poor quality, causing highlighted text to appear to be "blacked out" or redacted. The copy of the exhibit attached to the original of the Motion is highlighted, and does not appear to be redacted. The State was nonetheless able to address the content of the exhibit central to our discussion, as that content was quoted by Bridgewater in the Motion.

disposed in connection with Bridgewater's Rule 24.035 proceeding, and would have been overruled but for an exhibit attached to the Motion.

Attached to the Motion is a "File Memo" form used by the Missouri Office of State Public Defender.[8] The Form has several boxes at the top with pre-printed designations, and a large area beneath these boxes for notes. "A. Bridgewater" is handwritten in the box designated "Case Name," and "9/24/08" is handwritten in the box designated "Date." Beneath these handwritten designations are a series of handwritten notes. Pertinent to this Opinion is the following handwritten entry, which Bridgewater has highlighted:

> Went over plea form again w/client. Am confident in one life CC for client with guilty plea.

The date on the form, September 24, 2008, was the date of Bridgewater's guilty plea hearing on the assault and related armed criminal action charges. The form is not signed. Bridgewater claims in his Motion that the File Memo was prepared by his trial counsel. The form itself, and the topics addressed by the handwritten notes on the form, strongly suggest that Bridgewater is correct, and that the form was prepared by Bridgewater's trial counsel contemporaneously with the guilty plea hearing.

The File Memo thus appears to be "the notes of discussions" that trial counsel testified were "missing from [Bridgewater's] files," without which "[trial counsel]

---

[8]The Motion does not explain how Bridgewater came to possess the File Memo, other than to note that sometime after he was incarcerated, he "requested and received [his] entire legal file." On remand, the motion court is free to consider evidence regarding the circumstances giving rise to Bridgewater gaining possession of notes that were missing at the time of Bridgewater's Rule 24.035 hearing. We have accepted trial counsel's testimony at face value, and thus assume the notes were missing at the time of the hearing through no fault attributable to Bridgewater or his post-conviction counsel. If that assumption is not borne out by the evidence on remand, the motion court is free to so find.

9

couldn't give . . . specific details" about her discussions with Bridgewater. Because the notes were missing, when trial counsel was asked if she had "a recollection of telling [Bridgewater] that he would receive one life sentence with everything made concurrent," she testified "Again, I couldn't give you specific recall. I could only tell you what it would be my practice to tell a client."

**Analysis**

"[A]n appellate court divests itself of jurisdiction of a cause when the court transmits its mandate." *State v. Whitfield*, 107 S.W.3d 253, 265 (Mo. banc 2003); *see also Gray Realty Co. v. Swinney*, 297 S.W. 43, 45 (Mo. banc 1927). However, "jurisdiction may be reacquired by means of the 'judicial power to recall a mandate for certain purposes.'" *Id*. (quoting *State v. Thompson*, 659 S.W.2d 766, 768 (Mo. banc 1983)); *see also Reimers v. Frank B. Connet Lumber Co.*, 273 S.W.2d 348, 349 (Mo. 1954). Our Supreme Court "has never fully delineated the scope of that power." *Thompson*, 659 S.W.2d at 768. *Thompson* did, however, undertake a general discussion of the subject:

> Other courts have held that a mandate once issued may not be recalled absent one of a few specific exceptions, such as when the judgment is the result of prejudicial mistake of fact or of fraud, when there is irregularity or error in the issuance of the mandate, or when the mandate does not correctly reflect the judgment rendered by the court. In the criminal context, a motion for recall of the remittitur is not the proper remedy to correct a mere mistake of law, even though one exists. . . .

*Id*. (internal citations and quotation omitted). Our Supreme Court went on to note that:

> Whenever the judgment of an appellate court impinges upon the federal constitutional rights of the accused, however, the mistake cannot be said to be a mere [error] of law or procedure.

10

*Id.* at 769 (quotation omitted). "Consequently, our courts have properly recognized that a mandate may be recalled in order to remedy a deprivation of the federal constitutional rights of a criminal defendant." *Id.*; *see also Whitfield*, 107 S.W.3d at 265 (holding motion to recall mandate is appropriate to remediate the deprivation of a criminal defendant's constitutional rights). The Court in *Thompson* provided examples:

> For example, a motion to recall the mandate may be employed to seek reconsideration of an appellate court's affirmance of a conviction when a criminal defendant alleges ineffective assistance of counsel on appeal, or when a defendant has been deprived of appellate counsel altogether. Such a motion may also be employed when the decision of a lower court directly conflicts with a decision of the United States Supreme Court upholding the rights of the accused.

659 S.W.2d at 769 (internal citations omitted).

The examples mentioned in *Thompson* do not apply here. Ineffective assistance of appellate counsel is now subject to remediation by a timely filed Rule 29.15 motion, rendering reliance on motions to recall the mandate to secure such relief no longer necessary.[9] More to the point, because Bridgewater pleaded guilty and did not insist on going to trial, he never had appellate counsel. And, this is not a case where we are being asked to address the retroactive application of a United States Supreme Court decision. *See, e.g., Whitfield*, 107 S.W.3d 253 (where mandate was recalled to permit retroactive application of holding in *Ring v. Arizona*, 536 U.S. 584 (2002)).

---

[9]Prior to the amendment of Rule 29.15 effective January 1, 1996, ineffective assistance of counsel claims were to be asserted and considered in connection with a criminal defendant's direct appeal following conviction, rendering it a physical impossibility to entertain claims of ineffective assistance of appellate counsel at the same time, requiring such claims to be asserted in a motion to recall mandate. *See Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. banc 1994)*; State v. Turner*, 972 S.W.2d 438, 439, n.4 (Mo. App. E.D. 1998).

11

This is, however, a scenario where "the judgment of an appellate court impinges upon the federal constitutional rights of the accused." *Thompson*, 659 S.W.2d at 769. Bridgewater's claim of ineffective assistance of counsel in connection with his guilty plea has its origin in Bridgewater's constitutional right to the effective assistance of counsel. *State v. Harvey*, 692 S.W.2d 290, 291 (Mo. banc 1985) ("An essential element of a fair trial is the assistance of counsel, elevated to constitutional dimension by the sixth amendment.") (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The right to effective assistance of counsel "applies to all critical stages in the proceedings against [an] accused," including guilty plea proceedings. *Walker v. State*, 511 S.W.2d 859, 866 (Mo. 1974). "Rule 24.035 provides the exclusive procedure by which [Bridgewater] may seek relief" for a claim of ineffective assistance of counsel. Rule 24.035; *Brown v. State*, 66 S.W.3d 721, 727 (Mo. banc 2002) (overruled on unrelated grounds by *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 517 (Mo. banc 2010)).

We affirmed the motion court's judgment denying Bridgewater's Rule 24.035 claim because its sole and only finding--that trial counsel credibly testified that she followed her standard practice and thus did not make an affirmative representation to Bridgewater assuring that he would receive a single life sentence--was not "clearly erroneous." *See* Rule 24.035(k) ("Appellate review of the trial court's action on the motion filed under this Rule 24.035 shall be limited to determination of whether the findings and conclusions of the trial court are clearly erroneous."). It now appears that the subsequent issuance of our mandate will impinge, unless withdrawn, on Bridgewater's effective ability to challenge whether he received effective assistance of trial counsel in

12

connection with his guilty plea proceeding. The transcript from the Rule 24.035 hearing transcript establishes that the File Memo should have been in trial counsel's file, but was missing, and was thus unavailable to Bridgewater at the time of the Rule 24.035 hearing, through no apparent fault or lack of diligence on his part. The File Memo is plainly corroborative of Bridgewater's claim that trial counsel affirmatively misrepresented that he would receive a single life sentence by pleading guilty. The Rule 25.035 hearing transcript plainly establishes that without the File Memo, trial counsel had no independent recollection about her discussions with Bridgewater, requiring her to speculate about how she advised Bridgewater based on her standard practice. The File Memo's handwritten notation appears to be plainly inconsistent with trial counsel's Rule 24.035 hearing testimony, and with the motion court's finding that trial counsel did not make the affirmative representation attributed to her by Bridgewater based on an assessment of trial counsel's credibility.

To prevail on his claim of ineffective assistance of counsel, Bridgewater was required to show that (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances and (2) he was prejudiced thereby. *Strickland*, 466 U.S. at 687; *see also Taylor v. State*, 403 S.W.3d 683, 686 (Mo. App. W.D. 2013). Where a conviction is based on a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent it impinges on the voluntariness and knowledge with which the plea was made. *Stanley v. State*, 420 S.W.3d 539, 548 (Mo. banc 2014). "Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the

13

mistake is based on a positive representation upon which [he] is entitled to rely." *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. banc 2006). "When a defendant claims to have pleaded guilty based on a mistaken belief about his sentence, the test is whether a reasonable basis exists in the record for such belief." *Jackson v. State*, 421 S.W.3d 571, 575 (Mo. App. E.D. 2014).

Here, Bridgewater's ability to sustain his burden as to the first *Strickland* prong--the performance prong--could have been materially influenced by the File Memo. Trial counsel's written notation that she advised Bridgewater she was "confident" he would receive a single concurrent life sentence in exchange for his guilty plea appears plainly corroborative of Bridgewater's claim of ineffective assistance, and unless credibly explained away, could demonstrate that a "reasonable basis exists in the record for [Bridgewater's] belief" that he would only receive a single life sentence if he pleaded guilty. *Jackson*, 421 S.W.3d at 575.

Of course, even assuming the File Memo would have persuaded the motion court that plea counsel was deficient in affirmatively misadvising Bridgewater, Bridgewater would still have been required to establish the prejudice prong. He would have been required to establish that he reasonably relied on trial counsel's affirmative misadvice to his detriment, and that, but for the affirmative misadvice, he would not have pleaded guilty and would have insisted on going to trial. *Stanley*, 420 S.W.3d at 548.

Because the motion court found that Bridgewater did not establish the performance prong, its judgment made no findings or conclusions involving the prejudice

14

prong.[10] Our Supreme Court recently held in *Stanley* that a court on appeals should nonetheless affirm the denial of post-conviction relief under Rule 24.035 if the guilty plea record plainly refutes a movant's claim of prejudice. *Stanley*, 420 S.W.3d at 549. In *Stanley*, the Court detailed a plea court's thorough and deliberate efforts to determine on the record during the guilty plea hearing that the defendant knew and understood that the court would determine sentencing. *Id*. at 549-50. Specifically, the Court found that:

> The [plea] court's admonishments refute Mr. Stanley's claim that he did not sufficiently understand the nonbinding nature of his plea agreement. The plea colloquy tracked the requirements of Rule 24.02(b) and (c), and the court adequately ensured that Mr. Stanley's pleas were knowing, voluntary, and intelligent. Accordingly, his claim that plea counsel was ineffective for failing to explain adequately the concept of a nonbinding plea agreement is also refuted by the record.

*Id*. at 550.[11]

This case is distinguishable from *Stanley*. The record does not plainly refute Bridgewater's claim of prejudice. First, Bridgewater claimed he would not have pleaded guilty had he understood the multiple life sentences he faced could be made to be served consecutively, as that outcome ensured he would die in prison, and was no better an outcome than the alternative of going to trial. This assertion is facially plausible on this

---

[10]The failure to establish either of the *Strickland* prongs warrants denial of a post-conviction claim of ineffective assistance of counsel. *Taylor v. State*, 403 S.W.3d 683, 686 (Mo. App. W.D. 2013). Rule 24.035(j) directs that the motion court "shall issue findings of fact and conclusions of law on all issues presented." An ineffective assistance of counsel claim will always present both the issue of whether the performance and the prejudice prong were established. Best practice, if not the literal requirement of Rule 24.035(j), thus suggests that a motion court should make findings and conclusions on both the performance and the prejudice prongs of any post-conviction claim of ineffective assistance of counsel, even if the findings as to either prong would support the judgment.

[11]Though *Stanley* involved an allegation that counsel failed to adequately explain sentencing, we recently held that the rationale set forth in *Stanley* is equally applicable in cases involving an allegation that counsel affirmative misadvised a defendant about sentencing. *Thornton v. State*, 2014 WL 6781171 *4, WD 76734 (Mo. App. W.D. December 2, 2014).

15

record, and could be deemed credible by the motion court.[12] Similarly, Bridgewater claimed that he only pleaded guilty because a single life sentence would afford Bridgewater an outcome he would not likely get at trial--a modicum of hope that he could be eligible for parole during his lifetime. This assertion is also facially plausible on this record, and could be deemed credible by the motion court.

Second, unlike the guilty plea record in *Stanley*, Bridgewater's plea colloquy ***did not*** track the requirements of Rule 24.02 in an important respect that is material to this case. There was no discussion during Bridgewater's guilty plea hearing about the fact that the multiple life sentences Bridgewater understood he might receive could be made to run consecutively, a requirement of Rule 24.02(b)(1).[13] Thus, Bridgewater's claim that he relied to his prejudice on trial counsel's affirmative representation that he would receive a single life sentence (and thus concurrent sentences) is not plainly refuted by the record of the guilty plea hearing. Though Bridgewater was briefly asked after sentence was imposed whether he was satisfied with his trial counsel, the plea court qualified some of this limited inquiry by asking whether "***[o]ther than discussing this--the plea of guilty with you***, did your attorney communicate any threats or promises to you to induce you to enter your plea of guilty?" We simply do not believe that the guilty plea or sentencing records permit this court, without the benefit of testimony and an opportunity to assess the credibility of witnesses, to conclude as a matter of law that Bridgewater's claim of prejudicial reliance is refuted by the record. Whether Bridgewater has established the

---

[12]We are not predisposing the motion court's credibility findings on remand with respect to Bridgewater's claimed reliance, but note only that the claims are at least plausible, and are not plainly refuted by the record.

[13]*See* footnote number 2.

16

*Strickland* prejudice prong remains, therefore, a matter to be determined by the motion court on remand.

In short, this case presents a rare and unusual combination of facts that we have never seen in any reported decision in this State and that are highly unlikely to reoccur. Yet, the rare combination of facts presents an exceptional situation wherein we are empowered to reacquire jurisdiction by recalling our mandate to afford Bridgewater the opportunity to meet his burden to establish that he was deprived of the constitutional right to effective assistance of counsel. *See Whitfield*, 107 S.W.3d at 265. In fact, Bridgewater's only ability to redress the exceptional situation presented by this case is through the recall of our mandate.[14] To be clear, the rare and unique combination of

---

[14]We are confident that Bridgewater has no other meaningful remedy. Rule 29.07(d), which addresses the ability to withdraw a guilty plea, cannot be employed as a substitute for the timely assertion of a claim within the ambit of Rule 24.035. *Brown*, 66 S.W.3d at 727-31. Plainly, Bridgewater's ineffective assistance of counsel claim was within the ambit of Rule 24.035. Our conclusion that Bridgewater was deprived of a meaningfully ability to pursue his Rule 24.035 remedy is best remediated by reopening the Rule 24.035 hearing, and not by attempting to engraft a heretofore unrecognized exception to the legal principles differentiating between Rule 29.07(d) and Rule 24.035 so carefully explained in *Brown*.

Moreover, habeas corpus does not appear to afford Bridgewater a meaningful alternative. Habeas relief is available in limited circumstances to permit consideration of a procedurally defaulted claim that was not timely raised under Rule 24.035 or Rule 29.15. *See State ex rel. Zinna*, 301 S.W.3d at 517. Bridgewater timely raised his claim under Rule 24.035. Though the discovery of evidence after the conclusion of a Rule 24.035 or Rule 29.15 might, in rare circumstances, permit the reopening of a post-conviction proceeding under the "cause and prejudice" prong of habeas corpus relief, the "cause and prejudice" prong cannot generally be employed to redress defense counsel's failings, as cause and prejudice refers to a "procedural defect . . . caused by something external to the defense--that is, a cause for which the defense is not responsible." *Id.* at 516-17 (quoting *Brown*, 66 S.W.3d at 731), *but see Ewing v. Denney*, 360 S.W.3d 325 (Mo. App. W.D. 2012) (affording habeas relief to redress trial/appellate counsel's failure to perfect a direct appeal where defendant was mislead and thus failed to timely file a Rule 29.15 claim of ineffective assistance of counsel). In any event, habeas relief is traditionally associated with claims of manifest injustice arising out of assertions of actual innocence, or claims of cause and prejudice, both of which serve as a gateway to permit review of procedurally defaulted claims of constitutional proportion impacting the fairness of a defendant's trial. *See Amrine v. Roper*, 102 S.W.3d 541, 545-47 (Mo. banc 2003). The case before us does not involve a claim of actual innocence, or a procedurally defaulted claim that Bridgewater was deprived of a fair trial. Rather, the sole and only issue is whether but for trial counsel's affirmative representation about the sentencing structure Bridgewater would receive if he pleaded guilty, Bridgewater would have refused to plead guilty and would have insisted on going to trial. We are unaware of any case in the Missouri that has entertained a habeas claim under these circumstances. Even if a habeas petition could afford Bridgewater an alternative means to seek relief, our Supreme Court has recognized that habeas and the recall of a mandate are functionally equivalent in certain circumstances. *See Whitfield*, 107 S.W.3d at 269, n.19.

17

circumstances warranting this relief are Bridgewater's discovery of evidence after his Rule 24.035 hearing: (i) that the post-conviction record plainly establishes should have been in trial counsel's possession but was inexplicably missing; (ii) that was thus unavailable at the post-conviction hearing through no apparent fault of Bridgewater; (iii) that is established by the post-conviction record to be material as in its absence, trial counsel had no independent recollection of its content; (iv) that plainly supports the specific assertion of ineffective assistance of counsel set forth in the Bridgewater's Rule 24.035 motion; (v) that is plainly contradictory of a factual finding in the judgment explaining the motion court's denial of the Rule 24.035 claim; (vi) where the judgment denying the claim made no other findings that would alternatively support the judgment; and (vii) where the record does not plainly refute Bridgewater's claim of prejudice.

## Conclusion

Our mandate dated November 20, 2013 is recalled. Our order/memorandum dated September 20, 2013 is withdrawn. The motion court's judgment denying Bridgewater's Rule 24.035 motion is vacated. This matter is remanded to the motion court with instructions to reopen the evidentiary hearing on Bridgewater's Rule 24.035 claim of ineffective assistance of counsel asserting an affirmative misrepresentation by trial counsel that Bridgewater would receive a cumulative sentence structure of life imprisonment by pleading guilty. On remand, the motion court shall appoint Bridgewater counsel to represent his interests in the reopened Rule 24.035 proceeding. During the reopened hearing, the trial court shall permit the introduction of evidence it deems relevant to the File Memo, and may permit the introduction of such other evidence as it

18

deems relevant under the circumstances. The motion court shall thereafter issue its judgment addressing Bridgewater's Rule 24.035 claim in the manner required by Rule 24.035(j).

_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur