Nancy Steffen Rahmeyer, P.J.
The State appeals the granting of Brandon W. Stark's ("Movant's") Rule 24.035 motion for post-conviction relief.[1] In three points, the State contends that the motion court clearly erred in: (1) granting Movant's *381 claim for post-conviction relief because Movant's guilty plea was knowing, intelligent, and voluntary in that the "motion court relied on an irrelevant factor and the record demonstrated that [Movant] was aware of the rights and privileges he was waiving[;]" (2) granting Movant's claim for post-conviction relief because Movant was properly advised of the range of punishment in that "Missouri law does not require the sentencing court to explain that all sentences may be served consecutively[;]" and (3) granting Movant's claim for post-conviction relief because the "motion court lacked authority to grant some of the relief, in that Rule 24.035 does not apply to misdemeanors and infractions." The judgment is affirmed.
Standard of Review
We review a trial court's findings of post-conviction relief to determine whether the findings and conclusions of the motion court are clearly erroneous. Skillicorn v. State , 22 S.W.3d 678, 681 (Mo. banc 2000). "The motion court's findings and conclusions are clearly erroneous only if, after the review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." Soto v. State , 226 S.W.3d 164, 166 (Mo. banc 2007). The motion court's findings are presumed to be correct. Davis v. State , 486 S.W.3d 898, 905 (Mo. banc 2016). These standards apply regardless of whether the movant or the State appeals. Schaal v. State , 179 S.W.3d 907, 910 (Mo. App. S.D. 2005).
Factual and Procedural Background
On July 27, 2014, Movant operated a motor vehicle while under the influence of alcohol. While driving at an excessive speed and entering a left-hand corner, Movant skidded across the center road and off the roadway, striking a tree, fence, and electric pole. This accident injured M.D., who was less than two years old; B.S., who was eight-years-old; and another eight-year-old child also named B.S. Movant was charged with three counts of second-degree assault (a class C felony); three counts of second-degree endangering the welfare of a child (a class A misdemeanor); one count of operating a motor vehicle in a careless and imprudent manner (a class A misdemeanor); one count of cut in on overtaken vehicle (a class C misdemeanor); and four other infractions.
After Movant was arrested, he submitted an application for Public Defender services. On this application, Movant listed he made an income of approximately $15.25 an hour, and worked forty hours a week. The Public Defender System in Rolla, Missouri, sent a letter back to Movant stating that he did not qualify for services as his "[h]ousehold income [was] greater than the Federal Indigency guidelines" and "[p]ursuant to local Court orders, the Rolla Public Defender's Office [was] not allowed to enter an appearance in Misdemeanor Cases" unless the court orders it. Shortly thereafter, Movant submitted a second application to the Public Defender System informing them that he was no longer employed so he did not have any income to hire an attorney. However, Movant never received a response in regards to his second application. Further, Movant was never informed that he could appeal the Public Defender's decision that he did not qualify for services.
Thereafter, Movant appeared pro se and waived his preliminary hearing. A week later, Movant again appeared pro se at his arraignment. During the arraignment, Movant was informed that a class C felony carried a punishment range of two to seven years in prison, but he was never informed that the terms of imprisonment for each of the three class C felonies could run *382 consecutively for a total maximum of twenty-one years. Movant believed that the maximum number of years he could be sentenced to prison was for seven years. Movant never had any conversations with the prosecutor regarding any plea offers or the range of punishment for the charges. While Movant had previously been sentenced in other cases, he had no experience with consecutive sentences.
Following this, Movant was presented with a Waiver of Right to Counsel form. The trial court inquired into Movant's education level and his experience with the criminal justice system. Movant informed the trial court that he did not want to retain or apply for assistance of counsel at this time because he was fully aware of the charges against him and that he was ready to accept responsibility. After signing the Waiver of Right to Counsel form, Movant pleaded guilty to all twelve counts. During the guilty plea, the trial court again reminded Movant that he had a right to be represented, and Movant indicated he understood.
After Movant entered his guilty plea, Movant's sentencing hearing was held six weeks later where Movant again appeared pro se. The sentencing hearing was the first time Movant had learned that he was facing a twenty-one year sentence. After the State presented argument during the sentencing hearing, Movant presented argument. Movant concluded his argument by again saying that he was "ready to accept full responsibility" for his actions. The trial court then sentenced Movant to seven years for each of the three second-degree assault charges, which were to run consecutively for a total of twenty-one years. As for the three counts of second-degree endangering the welfare of a child and one count of operating a motor vehicle in a careless and imprudent manner, Movant was sentenced to a term of one year with each of those sentences to run concurrently with the sentences imposed for the second-degree assault felonies. On the charge of cut in on overtaken vehicle, Movant was fined $150. As for the four infractions, Movant was sentenced a $10 fine for each.
After Movant was sentenced to the Department of Corrections, he filed a motion for post-conviction relief claiming: (1) "[t]he Public Defender wrongfully denied Movant's applications for services, which resulted in a deprivation of Movant's right to counsel and due process of law and caused his waiver of counsel to be involuntarily entered[;]" and (2) "[t]he plea court did not ensure that Movant understood the maximum possible penalty provided by law, as required by Rule 24.02(b)(1), by failing to explain the possibility of consecutive sentencing, which resulted in a deprivation of Movant's right to due process of law and caused his guilty pleas to be involuntarily entered[.]"
During the evidentiary hearing on these claims, Cynthia Crawford, the administrative assistant at the Public Defender's office, testified that she denied Movant's application for services because he exceeded the income threshold. Further, she testified that she denied Movant's application because she thought that all of his charges were misdemeanors and local court rules prevent the Public Defender System from accepting applications with only misdemeanors. She believed Movant was only charged with misdemeanors, because they were the first nine counts listed, and she did not see the felony charges listed after them. Because the administrative assistant wrongfully believed that Movant did not qualify for Public Defender services in part because he was only charged with misdemeanors, she did not include in Movant's letter of denial that he could appeal the decision. Additionally, the administrative *383 assistant said it was office policy to shred any additional applications that a defendant may submit as it was common for some defendants to fraudulently change their answers in order to qualify for Public Defender services.
The district defender, Matthew Crowell, testified that he would have recommended Movant not to plead guilty in this case since the State's recommendation was the maximum sentence and that was the worst possible outcome they could receive. Further, he stated that a public defender could have assisted Movant in plea negotiations, and could have helped Movant present mitigating evidence at his sentencing hearing in hopes of reducing the sentence.
The prosecutor, Parke Stevens, testified that he had conversations with Movant about the case, which included telling Movant to get counsel since he was recommending a lot of prison time. However, the prosecutor testified that Movant told him that he "[knew he] did it" and that he "want[ed] to plead guilty" to "get this over with." Further, the prosecutor testified that before Movant signed the waiver of counsel form, he informed Movant that the sentences could "run concurrent, consecutive, 21 years maximum," and Movant's response was "I know" and "I want to get it done." However, no other record was made of the prosecutor's conversation and Movant denied this conversation took place. Lastly, the prosecutor testified that he was the one who wrote "up to 21 years in depart [sic] of corrections" on the waiver form before Movant signed it.
Following the evidentiary hearing, the motion court entered a judgment in favor of Movant. The motion court reversed Movant's convictions and ordered a new trial.
Point 1
The State contends that the motion court clearly erred in finding that Movant's guilty plea was not voluntary in that the motion court relied on the irrelevant factor of the Public Defender System denying Movant representation and that the motion court did not consider the entire record when making its ruling.
"Upon a plea of guilty, a criminal defendant waives his constitutional rights, including his Sixth Amendment right to trial and Fifth Amendment privilege against self-incrimination." Huth v. State , 976 S.W.2d 514, 516 (Mo. App. E.D. 1998). "The due process clause of the Fourteenth Amendment precludes a finding of a valid waiver of those rights unless it is knowing, intelligent, and voluntary." Id. Thus, we must determine whether the defendant knowingly, voluntarily, and intelligently entered his guilty plea based on the record. McMahon v. State , 569 S.W.2d 753, 758 (Mo. banc 1978).
"[A] plea of guilty must not only be a voluntary expression of the defendant's choice, [but] it [also] must be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act." State v. Hunter , 840 S.W.2d 850, 861 (Mo. banc 1992). The trial court and counsel for the defendant have a duty to inform the defendant of the "direct consequences" of pleading guilty, which are those that "definitely, immediately, and largely automatically" follow the entry of a guilty plea. Huth , 976 S.W.2d at 516-17. However, a failure to inform a defendant of the "collateral consequences" of a guilty plea does not render his plea involuntary. Harris v. State , 204 S.W.3d 371, 374 (Mo. App. S.D. 2006).
First, the State argues that the motion court relied on an irrelevant factor when the motion court determined that Movant did not knowingly enter his guilty *384 plea as showed by the motion court ruling that "[a]s a result of the Public Defender's wrongful denial of services, this Court concludes that Movant involuntarily waived his right to counsel[.]" The State then cites to State v. Kunonga , 490 S.W.3d 746, 764 (Mo. App. W.D. 2016), to demonstrate that when a trial court is considering whether a waiver of counsel was made knowingly, voluntarily, and intelligently, the court must look at all the circumstances surrounding the case, and then look to see whether the defendant understood exactly what rights and privileges he was waiving as well as the dangers associated with waiving constitutional rights. Kunonga does not assist the State. In Kunonga , a pro se defendant appealed his conviction. Id. at 758-60. He claimed the waiver of counsel form did not comply with a statutory provision. Id. In this case, the court found, after considering all the factors, that Movant did not knowingly, voluntarily, and intelligently waive his counsel.
The motion court found Movant's testimony to be credible. Movant testified that he did not know of any other counsel that could be appointed to him other than a public defender. Additionally, Movant testified that when the judge informed him that he could request for the judge to appoint counsel, he believed that his opportunity for this had already been denied. This belief was reasonable considering that Movant had already been denied once by the Public Defender System and never heard back from them regarding his second application. Because of this, the motion court found that "[w]hen Movant signed the waiver form, he had no reason to believe that the Public Defender was going to volunteer to represent him in this case" and that under the circumstances Movant's belief was reasonable.
"Waiver of right to counsel is knowing and intelligent only if the prisoner is either informed or is shown to know of the right to the appointment of counsel at public expenses if he is unable to employ counsel." Morris v. State , 456 S.W.2d 289, 293 (Mo. 1970). The court found that when Movant signed the waiver of counsel form, he believed that his only two options were to either hire private counsel or represent himself. The court found that because Movant did not know he had the right to appointed counsel he could not have known the rights and privileges he was giving up when he signed the waiver of counsel form. Thus, Movant's waiver was not made knowingly, voluntarily, and intelligently.
The motion court also found that Movant was prejudiced by lack of counsel. Movant pled guilty to all twelve counts and received the maximum possible sentences for his class C felony offenses. An appointed attorney would have advised Movant to reject a plea offer that recommended the maximum sentence in a felony case, since that would be the worst possible outcome he could have received. Additionally, an appointed attorney would have been able to assist Movant in presenting mitigating evidence during sentencing in hopes of reducing his sentence. Because Movant did not receive the benefit of plea negotiations or assistance in presenting an effective mitigation argument that would have been provided with an appointed attorney, Movant was thereby prejudiced. Point I is denied.
Point 2
Because we find in favor of Movant on Point I, that his waiver of counsel was not knowingly, voluntarily, and intelligently made, Point II is moot and will not be addressed.[2]
*385 Point 3
Movant was convicted of twelve counts: three counts of second-degree assault (a class C felony); three counts of second-degree endangering the welfare of a child (a class A misdemeanor); one count of operating a motor vehicle in a careless and imprudent manner (a class A misdemeanor); one count of cut in on overtaken vehicle (a class C misdemeanor); and four infractions. The State contends that the motion court clearly erred in granting Movant's motion for post-conviction relief because the motion court lacked authority to grant relief for Movant's misdemeanors and infractions in that Rule 24.035 only applies to felonies.
Because the State did not object to the motion court granting relief to Movant's misdemeanor and infraction convictions, the State's claim of error in Point III is not properly preserved for review on appeal. The State did not ask for plain error review, but instead sets out in their brief that the standard of review is "clearly erroneous." Failure to preserve an issue at the trial court typically waives the issue and is not reviewable on appeal. Messina v. Prather , 42 S.W.3d 753, 762 (Mo. App. W.D. 2001).
Appellate courts rarely grant plain error review in civil cases, as the rule should be used "sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." State v. Valentine , 646 S.W.2d 729, 731 (Mo. 1983). Plain errors are those that are "evident, obvious and clear." State v. Bailey , 839 S.W.2d 657, 661 (Mo. App. W.D. 1992). Thus, not every prejudicial error will be considered plain error. Messina , 42 S.W.3d at 763. We will reverse the trial court "only if we find that a 'manifest injustice or miscarriage of justice has resulted.' " Nelson v. Waxman , 9 S.W.3d 601, 605 (Mo. banc 2000) (quoting Rule 84.13(c) ). Manifest injustice depends on the facts and circumstances of the particular case, and, in this case, the State has the burden of establishing manifest injustice amounting to plain error. Messina , 42 S.W.3d at 763.
The State has made no argument that there is a manifest injustice to set aside a guilty plea of misdemeanor violations, particularly when Movant has already served at least three years in confinement for charges that allow one year as a maximum sentence. Point III is denied.
The judgment is affirmed.
Jeffrey W. Bates, J.-Concurs
Daniel E. Scott, J.-Concurs and Concurs by Separate Opinion
CONCURRING OPINION
DANIEL E. SCOTT -CONCURRING OPINION AUTHOR
We affirm beaucoup PCR denials because we defer to a motion court's express or implicit assessments of witness credibility and evidentiary weight, and recognize that court's right to credit some, all, or none of any particular testimony, which all seems even more appropriate if the movant's guilty plea, sentencing, and PCR hearing were all handled by the same *386 judge as occurred here. I reject the state's thinly-veiled pleas to do otherwise in this rare case of a successful PCR claim.
The court below found that Stark's pleas were not voluntary, a determination to which we defer. Letterman v. State , 369 S.W.3d 792, 793 (Mo. App. S.D. 2012). There was no clear error when we view the record most favorably to the judgment as we must. See Winans v. State , 456 S.W.3d 912, 916 (Mo. App. S.D. 2015). I concur.

The underlying convictions were for three counts of assault in the second-degree, three counts of endangering the welfare of a child in the second degree, one count of operating a motor vehicle in a careless and imprudent manner, one count of cut in on overtaken vehicle, three counts of driver failing to secure child less than sixteen years old in properly fastened restraint, and one count of no safety belt. See sections 565.060, 304.012, 304.016, and 307.178. Unless otherwise indicated, all statutory references are to RSMo 2000, and all rule references are to Missouri Court Rules (2017).

We suggest the State review the court's direct findings on credibility and direct the State to Bridgewater v. State , 458 S.W.3d 430 (Mo. App. W.D. 2015) (citing State v. Bursby , 395 S.W.2d 155, 159 (Mo. 1965) (emphasis added) ); see also Holland v. State , 954 S.W.2d 660, 662 (Mo. App. E.D. 1997) (holding that "where a defendant is pleading guilty to multiple counts, Rule 25.04 (the predecessor of Rule 24.02) requires the court to inform the defendant that the sentences may be made to run consecutively or concurrently") (citing Bursby , 395 S.W.2d at 159 ; Wiley v. State , 522 S.W.2d 41, 43 (Mo. App. 1975) (emphasis in original) ).