

## Missouri Court of Appeals
### Southern District
### Division One

JULIAN ROWLAND, )
               )
          Respondent, )
               )
    vs. )  No. SD36154
               )
STATE OF MISSOURI, )  FILED:  June 16, 2020
               )
          Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

#### Honorable William E. Hickle, Judge

**<u>AFFIRMED</u>**

After his first trial resulted in a hung jury, Julian Rowland ("Movant") was tried a second time on the same charges and found guilty of one count of first-degree rape and two counts of first-degree sodomy against G.F.  Movant thereafter sought and the motion court granted Rule 29.15[1] post-conviction relief ("PCR") on Movant's claim that the attorney who represented him in the underlying criminal proceedings, Daniel Dodson ("trial counsel"), was ineffective for failing to call Alicia Toothman ("Toothman") as a witness at Movant's trial because she could have provided testimony supporting his defense theory.

---

[1] All rule references are to Missouri Court Rules (2019).

1

The State appeals, asserting in three points that the motion court clearly erred because Movant 1) failed to prove Toothman would have testified at his trial, 2) failed to overcome the presumption that defense counsel's failure to call Toothman as a witness was reasonable trial strategy, and 3) failed to prove that the absence of Toothman's trial testimony was prejudicial. Finding no merit in any of the State's points, we affirm.

### Factual and Procedural Background

The criminal charges against Movant alleged generally that, on June 16, 2015, Movant engaged in acts of sexual intercourse with G.F. by the use of forcible compulsion. At Movant's second trial on those charges, the jury heard two different accounts of what transpired between Movant and G.F. on the date in question. The undisputed facts from both accounts are that G.F, an employee and representative for a property management company, drove Movant, a prospective client, in her car to tour various available rental properties. During the tour of one of the preselected properties, which happened to be vacant, G.F. was showing Movant around and opened a closet door in a bedroom. Movant then approached G.F. from behind and put his hands on her waist.

The testimony provided by G.F. and Movant differ as to what then followed. In brief, G.F. claimed that Movant forcibly subjected her to acts of rape and sodomy, while Movant claimed that they engaged in a consensual sexual encounter.

Thereafter, G.F and Movant departed the property together and drove to G.F.'s office, a two-minute drive. Each testified to a different account of what transpired during that drive. According to G.F., she was tearful but was trying to hold it together because she thought Movant might try to run away. She claims she did *not*, however, try to joke or laugh with Movant. Sometime during the drive, Movant asked if he could get a deal on the apartment. G.F. responded, "maybe, let me see, I can call George right now" and placed a call to her office,

2

asking for George. G.F. explained that George was not a real person but a code word to be used when an employee was in trouble or needed help.

The fellow employee who received G.F.'s call testified that the call was placed sometime around 1:15 p.m. or 1:30 p.m. and described G.F.'s voice as sounding "quivery" during their conversation.

Movant testified that before G.F. placed her phone call during the drive, he and she were joking and laughing about their sexual encounter. Movant claimed that, while G.F. was laughing, he received a phone call from his nurse. It was not until after he got off of the phone that he asked if G.F. could get him a deal on the apartment, at which point G.F.'s mood changed and she made the phone call asking for George.

Following the close of all evidence, the jury began their deliberations at 6:33 p.m. on June 17, 2016. After nearly three hours of deliberation, the jury sent the following note to the trial court:

> After discussion, our jury is not unanimous as to the guilt of Julian Rowland. There are at least 4 of our panel to [sic] disagree that [G.F.] did not give consent to the physical act. Can we as a jury disagree and be considered a "hung jury" or must we decide guilty beyond a reasonable doubt or "not guilty" if we are not unanimous.

At 9:28 p.m., the trial court read the "hammer" instruction,[2] and, at approximately 10:20 p.m., the jury returned guilty verdicts on all charged counts.

Following his convictions, the trial court sentenced Movant to three consecutive seven-year terms of imprisonment. His convictions and sentences were later affirmed on direct appeal in *State v. Rowland*, 528 S.W.3d 449 (Mo.App. 2017).

---

[2] *See* MAI-CR 3d 312.10.

3

Thereafter, Movant filed timely *pro se* and amended PCR motions. Movant's amended PCR motion claimed, in pertinent part, that "Trial counsel was ineffective for failure to investigate and call [Toothman] as a defense witness" ("IAC claim"). In support of his IAC claim, Movant alleged that Toothman was the nurse who called Movant's cell phone while G.F. was driving Movant back to her office, that Movant informed trial counsel about Toothman and how to contact her, that Toothman would have testified if called at Movant's trial that she overheard a woman laughing in the background during the call with Movant, that a reasonably competent attorney would have called Toothman to testify because doing so would have contradicted G.F.'s testimony and corroborated Movant's testimony, and that a reasonable probability exists that Movant would not have been convicted had Toothman been called.

The same judge who presided over the two trials involving the underlying charges against Movant also served as the PCR motion court. An evidentiary hearing on the amended PCR motion was held at which Movant presented, in pertinent part, testimony from Toothman and trial counsel addressing the allegations of the IAC claim.[3] Ultimately, the motion court granted the IAC claim. Its findings of fact and conclusions of law, in pertinent part, were as follows:

> [Toothman] testified that had she been subpoenaed and called as a witness at trial, her testimony would be substantially the same as her testimony at post-conviction hearing. She would have testified if called as a witness.
>
> [Trial] counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances by failing to call [Toothman] as a defense witness to testify at trial. [Toothman]'s testimony would have contradicted G.F.'s testimony that she and Movant were not laughing and joking in the car. Her testimony would have corroborated Movant's testimony on the crucial, disputed issue of G.F.'s demeanor just minutes after the sexual activity had taken place. The testimony would have supported the defense's theory of the case that the sexual contact was consensual.

---

[3] The relevant specifics of Toothman's and trial counsel's testimonies are detailed throughout our discussion of the State's three points, *infra*.

Though Movant informed trial counsel of [Toothman]'s whereabouts and of her anticipated testimony, trial counsel failed to call her as a witness and failed to request a continuance to ensure her presence at trial. No reasonable trial strategy accounts for trial counsel's failure to investigate and call [Toothman] as a witness and Movant was prejudiced by [trial counsel]'s failure to do so. Trial counsel was aware that the first jury was deadlocked, and that the jury in the second trial would be gauging the respective credibility of Movant and G.F. as each gave contradictory versions of the events that that [sic] took place on June 16, 2015. He knew that a separate independent witness, [Toothman], was available to confirm Movant's account and contradict G.F.'s account of the events that took place in the car ride minutes after the sexual activity occurred. Even without this testimony, the jury in the second trial that ultimately convicted Movant was divided 8-4 after hours of deliberation.

The State timely appeals.

## Standard of Review

We review a trial court's findings of post-conviction relief to determine whether the findings and conclusions of the motion court are clearly erroneous. *Skillicorn v. State*, 22 S.W.3d 678, 681 (Mo. banc 2000). "The motion court's findings and conclusions are clearly erroneous only if, after the review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc 2007).
The motion court's findings are presumed to be correct. *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016). These standards apply regardless of whether the movant or the State appeals. *Schaal v. State*, 179 S.W.3d 907, 910 (Mo. App. S.D. 2005).

*Stark v. State*, 553 S.W.3d 378, 381 (Mo.App. 2018). "The trial court has the 'superior opportunity to determine the credibility of witnesses,' and this Court defers to the trial court's factual findings and credibility determinations." *Zink v. State*, 278 S.W.3d 170, 178 (Mo. banc 2009) (quoting *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998)).

## Discussion

In order to prove an IAC claim, the movant must demonstrate (1) that counsel's representation failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney rendering similar services under similar circumstances (performance prong); and (2) that the movant was prejudiced as a result of counsel's failure (prejudice prong).

5

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). To satisfy the performance prong, a movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). In order to demonstrate the requisite prejudice, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

As relevant here, if the IAC claim is for the failure to call a witness, the movant must show the following: "(1) counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense."[4] *McFadden v. State*, 553 S.W.3d 289, 305 (Mo. banc 2018) (internal quotation marks omitted). Counsel's decision not to call a witness is presumed to be a matter of trial strategy and will not support an IAC claim unless the movant clearly establishes otherwise. *State v. Clay*, 975 S.W.2d 121, 143 (Mo. banc 1998).

The State presents three points on appeal challenging the motion court's judgment granting the IAC claim. The State asserts, respectively, that Movant 1) failed to prove that Toothman would have testified if called as a witness (according to the third *McFadden* requirement, *supra*), 2) failed to rebut the presumption that trial counsel's failure to call Toothman was reasonable trial strategy (according to *Clay*, *supra*), and 3) failed to prove that Toothman's testimony would have provided him with a viable defense (according to the fourth

---

[4] The State does not contest the trial court's findings of fact or conclusions of law as to the first two *McFadden* requirements.

*McFadden* requirement, *supra*).  Because all of the State's points fail for the same reason, we address them together.

The following facts adduced at the PCR evidentiary hearing are relevant in discussing the State's points.  Toothman, a licensed practical nurse specializing in psychiatric medicine, testified that Movant was her patient.  According to Toothman, she twice called Movant, on either the 15th or 16th of June 2015, to discuss a medical release.  Because those phone calls were made from her office, they would have been received as coming from a blocked number.  Toothman recounted that, on the second call to Movant, he sounded "very, very distracted[,]" his location "sounded like a car[,]" "there was a female in the car or in the place that he was[,]" and that "[t]here was some laughing at that moment" by the female.

Trial counsel testified that the defense theory he pursued in both of Movant's trials was that Movant and G.F. had had a consensual sexual encounter.  In March 2016, approximately three months before the second trial date, Movant had informed trial counsel about Toothman.  The information trial counsel received included a copy of Toothman's progress notes on Movant and a copy of Movant's phone record.  Toothman's progress notes indicated that she was in phone contact with Movant on June 16, 2015, and he was with someone and could not speak candidly.  Movant's phone records indicated that he received two phone calls from a blocked number on June 16, 2015, one at 11:37 a.m. and one at 1:27 p.m.  The phone record, according to trial counsel, "sure seemed to fit with the exact time frame that he referred to."

Trial counsel further testified that he attempted to serve Toothman with a subpoena.  The service of the subpoena, however, was not attempted until *one day before* Movant's June 16, 2016, trial even though trial counsel admitted to having known about Toothman and her potential

7

testimony for three months. Regarding Toothman, trial counsel conceded that "we just didn't get it done . . . [a]nd it probably had a lot to do with me not getting to it as soon as I should have."

Toothman confirmed in her testimony that she never received trial counsel's subpoena, explaining that she was out of town on a field trip with her daughter on the date that service was attempted. Specifically asked, "If you had been subpoenaed to testify back in 2016 and were asked substantially the same questions, would your answers be the same as far as your recollection as to this phone call[,]" Toothman responded, "Yeah."

All of the State's arguments in support of its points, which we address in order, disregard our standard of review. The State first argues that Toothman *was never asked* during the evidentiary hearing if she would have testified and that evidence adduced supported the contrary conclusion that she was *unwilling* to testify. In support of this argument, the State suggests that Toothman's affirmative response when asked whether her testimony would have been the same if she had been subpoenaed only "*presupposed*" that she would have so testified. The State goes on to cite testimony that it argues suggests the opposite, including statements by trial counsel that Toothman "was hard to track down[,]" "seemed to have some hostility toward the idea of being a witness[,]" and "maybe even didn't go to work for a day or two to try to avoid the subpoena"; and statements by Toothman acknowledging that she was aware of attempts by trial counsel to contact her but without any indication of whether she attempted to or did respond.

The State's argument, however, minimizes or completely ignores that Toothman's testimony allowed for a reasonable inference that she would have testified at Movant's trial *had she been subpoenaed to do so*. Moreover, in promoting inferences contrary to those drawn by the motion court, the State relies upon and emphasizes other evidence in the record that the motion court, under our standard of review, was free to reject. *See Zink*, 278 S.W.3d at 178. In

8

both respects, the State's argument contravenes our standard of review. This Court defers to the motion court's factual findings and credibility determinations. *Id.*

The State next argues that trial counsel had a reasonable trial strategy for not calling Toothman as a witness at Movant's trial. During the evidentiary hearing, trial counsel was asked, "So is it fair to say that you didn't have a strategic reason for not calling [Toothman]?" The State premises its reasonable-trial-strategy argument on the following response to that question: "Other than I got the idea that she was very reluctant. And it just seems like somewhere along there I got the idea that she didn't have – that she would not have recalled that. But I may be mistaken about that."

The motion court, however, was also free to reject trial counsel's testimony suggesting that he attributed his failure to call Toothman, at least in part, to his possibly mistaken belief that she was either reluctant or unable to provide testimony. It, instead, credited trial counsel's other testimony that he tried but failed to subpoena Toothman on the day before Movant's trial. Thus, the motion court found that delay, not trial strategy, reasonable or otherwise, was the reason for trial counsel's inaction. Again, this Court is required to defer to these findings. *Id.*

Finally, the State argues that Toothman's testimony would not have provided Movant with a viable defense. The State begins by claiming that Movant failed to produce any direct or circumstantial evidence that Toothman's phone call to Movant occurred during the drive to G.F.'s office. The State notes that Toothman never specifically identified the female's voice she overheard as belonging to G.F., Toothman could not positively say for sure whether the phone call occurred on June 16, 2015, and Movant never specifically informed Toothman who was with him or that he was in a car. The State then goes on to conclude that Toothman's testimony lacked logical and legal relevancy; relied on forced or speculative inferences; would have only

9

served to impeach G.F.'s testimony that she was not laughing; and would have had only an isolated, trivial effect in light of the strength of the State's evidence and the liabilities posed by a potentially damaging cross-examination of Toothman.

We begin by noting that the State's argument is based, in part, upon the false premise that Movant's phone records were not in evidence because an exhibit comprising those records was neither offered nor received into evidence and Toothman could not say for sure on what date her calls to Movant took place. However, trial counsel testified, without objection, that Movant's phone records reflected that he had received two calls from a blocked number, one of which occurred at the relevant time of 1:27 p.m. on the relevant date of June 16, 2015. The addition of Toothman's testimony that she made calls on the 15th or 16th and that those calls would have appeared as a blocked number allows for a reasonable inference that the 1:27 p.m. call was from Toothman. The occurrence of Toothman's phone call during the relevant timeframe at issue further allows for a reasonable inference that the female Toothman heard was G.F. Additionally, Toothman drew her own reasonable inference, based upon the sounds that she heard, that Movant was riding in a car. The motion court was free to and did credit all of this testimony.

"When the testimony of the witness would only impeach the state's witnesses, relief on a claim of ineffective assistance of counsel is not warranted." *Whited v. State*, 196 S.W.3d 79, 82 (Mo.App. 2006). "However, when the testimony of the witness would also negate an element of the crime for which a movant was convicted, the testimony provides the movant with a viable defense." *Id.*; *see also Black v. State*, 151 S.W.3d 49, 57–58 (Mo. banc 2004) (finding IAC prejudice where unoffered evidence "went to a central, controverted issue on which the jury focused during deliberations").

Here, the crimes for which Movant was charged required the State to prove that Movant subjected G.F. to forcible compulsion.[5]  As relevant here, the motion court found that 1) Movant's defense theory at trial was that G.F. gave consent, 2) Toothman's testimony was relevant to this "crucial, disputed" issue, and 3) the jury focused on and were initially divided 8-4 over this issue.  Movant's arguments addressing the relevancy, purpose, and relative strength of Toothman's testimony vis-à-vis the evidence produced by the State, again, contrary to our standard of review, ignores the motion court's findings and attempts to reweigh the evidence.

In sum, the flaw in all three of the State's points and supporting arguments is that each disregards the evidentiary support in the record favoring the motion court's findings and conclusions and urges us to adopt the State's view of that evidence.  While the motion court could have weighed and viewed the evidence in the manner suggested by the State, we cannot do so because that does not comport with the standard by which this Court reviews a motion court's decision based upon the facts as determined by that court.  Rather, as is the case here, "'[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." ***White v. Director of Revenue***, 321 S.W.3d 298, 310 n.13 (Mo. band 2010) (quoting ***Anderson v. City of Bessemer City***, 470 U.S. 564, 574 (1985)).  Points 1, 2 and 3 are denied.

### Decision

The motion court's judgment is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR
NANCY STEFFEN RAHMEYER, J. – CONCURS
WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[5] "Forcible compulsion" is defined as "(a) Physical force that overcomes reasonable resistance"; or "(b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person[.]"  Section 556.061(12), RSMo Cum.Supp. (2013).